BIGELOW *against* BENEDICT and another.

> Where the securities given for the mortgage debt, were described, in a bill of foreclosure, as five promissory notes, four for the sum of one hundred dollars each, and one for the sum of two hundred dollars; and the condition of the mortgage deed described them as four notes for the sum of one hundred each, and one for the sum of two hundred dollars; it was held, that there was no variance, the word "dollars" being understood in the former clause of the condition.

> Where *A.* owed a debt to *B*; *C.* became the surety of *A.* on notes given for such debt, and also mortgaged land to *B.* as collateral security, *A.* being one of the subscribing witnesses to such deed; and *B.*, on a bill of foreclosure brought by him, called *A.* to prove the execution of the deed; it was held, that *A.* was a competent witness for *B.*, as his interest was either balanced, or against the party calling him.

This was a bill in chancery for a foreclosure. The bill stated, That on the 8th of *December*, 1818, *Timothy Benedict* and *Isaac Tucker* were justly indebted to the plaintiff in the sum of 600 dollars, for which they gave the plaintiff five promissory notes, four for the sum of 100 dollars each, and one for the sum of 200 dollars, all payable, by the makers jointly and severally, to the plaintiff, within three years from the date, with interest annually; and that to secure the payment of these notes, *Benedict*, on the same day, mortgaged to the plaintiff certain pieces of land; the condition of the mortgage deed being, that whereas said *Benedict* and said *Tucker* had, on the day of the date of said deed, given to the plaintiff their five promissory notes, made payable as before described, if they, or either of them, should well and truly pay each and all of said notes, according to the tenor thereof, said deed should be null and void, otherwise remain in full force. *Benedict* and *Tucker* were both made parties.

On the hearing, at *Litchfield, August* term, 1825, before *Peters*, J. the plaintiff offered in evidence a deed of the lands described in the bill, duly executed, by *Benedict*, to the plaintiff,

the consideration expressed therein being 600 dollars ; to which deed there was the following condition : " That whereas the said *Timothy Benedict* has, this day, given and executed to the said *Benjamin Bigelow* five notes of hand, which notes are given and executed, by himself and *Isaac Tucker*, binding themselves, jointly and severally, to pay to him four notes for the sum of one hundred each, and one note for the sum of 200 dollars, all payable within three years from the date, with interest to be paid annually ; now, if the said *Timothy* or *Isaac*, or either of them, shall well and truly pay each and all of said notes, according to the tenor thereof, then this deed is to be null and void, otherwise to remain in full force." The notes were given for the proper debt of *Tucker ;* and *Benedict* signed them, and executed the mortgage deed to the plaintiff, for *Tucker's* benefit ; *Tucker*, at the same time, securing him by mortgage. The only witnesses to the mortgage deed from *Benedict* to the plaintiff, were *Tucker* and another person. The plaintiff, to support his claim, offered in evidence four notes of hand, for 100 dollars each, and one for 200 dollars, dated the 8th of *December*, 1818, signed by *Benedict* and *Tucker*, and payable by them, jointly and severally, to the plaintiff, within three years from the date, with interest annually. To the admission of such deed and notes in evidence the defendants objected ; but the court admitted them, and passed a decree in favour of the plaintiff. The defendants thereupon moved for a new trial.

*P. Miner* and *J. W. Huntington*, in support of the motion, contended, 1. That the deed offered in evidence was inadmissible, on account of a variance between the condition and the statement of it in the plaintiff's bill. The bill counts upon a mortgage deed with a condition, stating the execution of four notes of hand, by the defendants, of 100 dollars each. The deed offered in evidence describes four notes for the sum of one hundred each ; omitting the word " dollars."

In relation to all written documents exhibited as evidence, the court are to decide upon the *words* which they contain. They are not to *supply* or *substitute* words, and thus make contracts for parties. What is the legal construction of the terms used, is the only enquiry ; not what it would be, were different terms used. In the present case, the court are called upon to say, that the import of a note given for one hundred—without any denomination of money, or collateral article superadded,—

*Litchfield,*
June,
1826.

Bigelow
*v.*
Benedict.

is a promise to pay 100 dollars. The writings shew, that the obligor has not thought proper to bind himself to pay any specific sum, in money, or in any collateral article ; and if the court can supply what they deem an omission, they may as well insert *pounds* or *guineas*, as dollars.

It may be said, that these notes were given for *something*; and therefore, that construction, which makes them notes for *nothing*, must be wrong. In the first place, this is a *petitio principii*. If nothing was inserted, which was to be paid, then they were given for nothing ; and such is the legal construction of all such instruments, while they remain thus uncertain. In the next place, if something was promised to be paid, it does not follow that it was *dollars*, or even any description of *money*. The court cannot infer from the utter silence of the obligor in relation to the duty he was to perform, what that duty was.

Again, it may be said, that the condition specifies, that these notes are to be *paid ;* and the inference is, that *dollars* were to be paid. First, this is a *non sequitur*, for the reasons already suggested. Secondly, the notes were indeed to be paid ; but the condition also shews, that they were to be paid *according to their tenor ;* and what their tenor is, must be ascertained from inspection. This does nothing to help the plaintiff on towards his conclusion.

It may be further said, that the word omitted in the condition was *dollars*, because it is so expressed in the notes, to which the condition evidently refers. But upon the question now before the court, we have nothing to do with the *notes*. The single enquiry is, whether an averment in the bill of the condition of a deed specifying four notes of 100 *dollars* each, is supported by a deed containing a condition describing four notes of *one hundred* each. A clearer case of variance between the *allegation* and the *proof* can hardly exist. *Waugh & ux.* v. *Bussell*, 5 *Taun.* 707. S. C. 1 *Marsh.* 214. 311. *Stanton* v. *Button*, 2 *Conn. Rep.* 527. *Pendleton* v. *Button*, 3 *Conn. Rep.* 406. *Powers & al.* v. *Ware*, 2 *Pick.* 451.

2. That the deed was invalid, not being duly attested. Both the subscribing witnesses must, either at the time of attestation, or at the time of trial, be competent to testify. This is apparent from the *object* of the statute, and from the import of the term *witness*. An attestation by persons who cannot testify, is, to every practical purpose, no attestation at all : such persons are not witnesses.

That *Tucker* was interested, is incontrovertible. He was the *debtor*; *Benedict* being only his *surety*. *Tucker* was bound to indemnify *Benedict* in respect of the deed, and all its consequences. He is a party to this bill; and the decree is against him. If he be called to invalidate the deed, he is interested to accomplish that object. If he be called to establish it, this is against his interest, and he cannot be compelled to testify.

*Benedict* and *T. Smith*, contra, contended, 1. That there was no variance between the notes as stated in the bill and as described in the condition of the deed. So far as any description of the notes is given in the deed, it conforms exactly to the description in the bill. All that can be said, is, that the notes are *imperfectly*, or *not fully*, described in the deed. The consideration of the deed is 600 dollars, the exact amount of the notes. The dates and times when payable, are all the same; and one of the notes is fully set out. If the words "for one hundred each," are to be rejected as insensible, then the condition given in the deed would be to stand as security for five notes of that date, payable in three years; and if that had been all, might not the bill aver, and ought it not to aver, what the amount of the notes was? The deed would convey the land as security for the notes, by any reference to them, however imperfect; and then any averments in the bill, standing well with the deed, might be made and proved.

But the words for "one hundred each," by necessary intendment, must be understood as meaning 100 *dollars* each. *Booth* v. *Wallace*, 2 *Root* 247. That this was in fact the meaning of the parties, is evident from the context. The several clauses of the condition must be read together; and from the expression of the word *dollars* in the latter clause, it is obvious that the same word is understood in the former. This is purely a matter of *construction*.

2. That *Tucker* was a proper instrumentary witness to the deed. He was not called to testify as to the validity of the notes. If he had been, *Benedict* could not object; because his interest would be to defeat a recovery, and consequently to avoid any future liability. He was only called to prove the execution of the deed. And what has he to do with this security? If *Benedict* signed the notes, he must pay them; and how is *Tucker's* condition improved, by *Benedict's* giving collateral security? If *Tucker* had any possible interest, it would be to defeat the se-

*Litchfield,*
June,
1826.

*Bigelow*
*v.*
Benedict.

curity; for if the land is foreclosed, the debt is paid; and then *Tucker* becomes immediately liable over to *Benedict* for so much money paid for his benefit. But the truth is, his interest is exactly balanced; for he is, at all events, liable to pay the note. If he pays it himself, he is discharged from any liability to *Benedict* for becoming his surety. If he suffers *Benedict* to pay it, then he must indemnify him, by refunding to him the money so advanced. 1 *Phill. Evid.* 53. and cases there cited, especially *Birt* v. *Kershaw*, 2 *East* 458. He cannot be affected even to the extent of costs in this suit; because his contract of indemnity does not extend to redeeming any collateral security, which *Benedict* might see fit voluntarily to give. When *Benedict* signed the notes, it does not appear to have been any part of the agreement, that he should give security to *Bigelow ;* and, of course, there was no implied promise, on the part of *Tucker*, to indemnify him for so doing. But if he gave a mortgage to *Benedict*, by way of indemnity, for *Benedict's* mortgage, his interest would be to defeat that mortgage, and thus relieve his own.

PETERS, J. This case presents two questions. 1. Is *Tucker* a competent witness to the deed in question. 2. Are the notes well described in the condition thereto annexed?

*Tucker* was the principal debtor. *Benedict* became his surety, and pledged his estate to *Bigelow*, to secure this debt. *Tucker* subscribed the deed as a witness; and was called, by *Bigelow*, to prove its execution, to effect a foreclosure, and thus pay his own debt with *Benedict's* estate; thereby becoming his debtor for the same amount. *Tucker's* interest in the event, if any he had, is perfectly balanced; as the principal is always bound to indemnify his surety. 1 *Phill. Evid.* 54. and the authorities there cited. But admitting *Tucker* to be interested, against whom is his interest? "The mortgagee," say the defendants' counsel. Who objects? The mortgagor. But it is a well settled rule, that a witness is competent, when called on to testify, by a party against whom he is interested. 1 *Phill. Evid.* 57. n.

Are the notes well described in the condition annexed to the deed? It is correctly said, by the defendants' counsel, that in relation to all written documents exhibited as evidence, the court are to decide upon the *words* they contain; and what is the legal construction of the words used, is the only enquiry,

But it is not true, that in this case, the court are called upon to say what is the import and meaning of a note given for "*one hundred.*" This certainly would be a vain undertaking. But we are called upon to say, what is the meaning of the defeasance annexed to the deed in question; and this is to be ascertained, by the words used, the subject matter, the context and the intention of the parties. The sentence is not very accurately expressed; but read with the eyes of common sense, it is perfectly intelligible. Omit the word "each," or place it after the word "notes," and the meaning will be precisely what it now is, *viz.* four notes for one hundred, and one for two hundred, dollars. The subject matter is a debt in dollars; and the context demonstrates the intention of the parties, one to give, and the other to receive, a real pledge for the security of this debt. The sentence is eliptical; and the word "dollars" is understood wherever the sense of the contract requires it. In *Booth* v. *Wallace*, 2 *Root* 247. in an action on a note for "thirty-two, twelve *shillings*, and five *pence*," it was decided, and I think correctly, that the word *pounds*, after "thirty-two," was necessarily implied.

I would not advise a new trial.

The other Judges were of the same opinion, except BRAINARD, J., who was absent when the case was argued, and therefore gave no opinion.

New trial not to be granted.