## THE NORWICH BANK *against* HYDE.

Where a writing was given, in the form of a note, promising to pay        dollars, in the margin of which was written $200; it was held, in an action against the indorser, alleging a promise to pay 200 dollars, that such writing was not admissible in support of the declaration; the office of the *memorandum* in the margin being to remove an ambiguity in the body of the instrument, and not to supply a blank.

In such case, a *bona fide* holder has authority to fill the blank with any sum, not exceeding the limitation in the margin, which the transaction between him and the person from whom he received the paper, will warrant.

THIS was an action against *Samuel L. Hyde,* as indorser of a promissory note, made by *Oliver Allen,* for 200 dollars. The first count in the declaration was in common form: there was another, which it is not necessary to state.

*New-London,*
*July, 1839.*

The Norwich
Bank
*v.*
Hyde.

The cause was tried at *New-London, September* term, 1838, before *Church,* J.

On the trial, the plaintiffs produced in evidence the following writing:

"$200.                    *Norwich, Ct. Feb.* 6th, 1837.

" Sixty days after date, for value received, I promise to pay to the order of *Amos D. Allen,*        dollars, at the *Quinebaug Bank.*                    *Oliver Allen.*"

It was admitted, that the name of *Oliver Allen* was in his hand-writing; and that the paper was indorsed, first by the payee, and then by the defendant.   On the 10th of *April,* 1837, the paper was presented, at the *Quinebaug Bank,* for payment; it was not paid; and on the same day, notice of such presentment and non-payment was given to the defendant.

Upon these facts, the defendant claimed, that the paper in question was not a note for 200 dollars, as alleged in the first count of the declaration, and was not admissible to prove the averments in that count; and prayed the court so to charge the jury.

The court charged the jury, that this paper was a note for 200 dollars, and was admissible as evidence to prove the averments in the first count.   No evidence was offered under the second count.

The jury returned a verdict for the plaintiffs; and the defendant moved for a new trial.

*Strong* and *Child,* in support of the motion, contended, That the paper in question did not prove the contract alleged : that is, it did not shew a promise to pay 200 dollars.   The instrument must speak for itself.   The meaning of the parties must be collected from the words they have made use of. This is nothing more than a paper signed in blank.   It does not purport to be a promise to pay any thing.   The figures in the margin constitute no part of the promise to pay.   Suppose the sum specified in the body of the note was 100 dollars, and in the margin $200; would it be void for uncertainty?   Or suppose, that in this case, evidence were offered to prove that the parties intended a note for 100 dollars; would it be inadmissible as contradicting the writing?   In short, are the figures

in the margin a part of the contract? The question is not, whether the *memorandum* would be evidence on an application to a court of chancery to reform the instrument, or of authority in the holder to fill the blank; but whether the instrument, as it is now, contains a promise to pay 200 dollars. The court did not submit to the jury the question of intention, as shewn by the *memorandum*, but charged them, as matter of law, that the writing was a promise to pay 200 dollars. Is this so?

*New-London,* July, 1839.

The Norwich Bank *v.* Hyde.

*Goddard* and *G. Perkins,* contra, insisted, 1. That taking the whole instrument together, body and margin, (as it should be,) it was a promissory note for 200 dollars. The superscription is recognized in mercantile law, as well as by mercantile usage, as part of the instrument. *Beawes' L. M. s.* 193. *Chitt. Bills,* 60. 66. (7th *Am.* ed.) *Marius* 138. *Elliot's* case, *Leach's Cr. Ca.* 185. *Hulbert* v. *Long, Cro. Jac.* 607. *Boyd* v. *Brotherson,* 10 *Wend.* 93. *Booth* v. *Wallace,* 2 *Root* 247. No one, looking at this paper, can fail to understand what the parties meant.

2. That this writing at least gave authority to the *bona fide* holder to fill up the blank with a sum not exceeding 200 dollars; and if so, entire justice has been done, by the verdict: consequently, a new trial will not be granted.

WILLIAMS, Ch. J. It is a well settled principle, that no precise form of words is necessary to constitute a note or bill of exchange; yet all the authorities agree, that the sum must be specified, so as that it may be definitely known what sum was intended. Indeed, it seems to be a first principle, that the sum to be paid must be clearly and intelligibly expressed. *Chitt. Bills, part* 1. *c.* 3. *s.* 11. *Beawes' L. M. s.* 193. Does this note, then, clearly and intelligibly import a promise to pay the sum of 200 dollars? Or, does it appear to be an imperfect instrument?

The question upon this declaration, is not, whether this may not properly be made a valid instrument, but whether, in its present shape, it is precisely what it would have been, had it been filled up in the usual manner? If we so hold, what becomes of the rule above stated, that the sum must be clearly and intelligibly stated in the body of the instrument?

Would not a note of this description leave a doubt in the mind of any one, whether it was a perfect instrument ?   Would not its appearance tend to impede its currency and clog its circulation ?   It certainly would be a very loose mode of doing business, in cases which seem to require great accuracy, and one to which we cannot assent, unless we find it settled by authority.

It was claimed, that *Beawes,* in his *Lex Mercatoria,* supports the practice.   As much reliance has been placed upon this authority, it may be well to examine it minutely.   His words are : " The sum should be written in the bill, in clear and distinct characters, and the amount superscribed in figures. The latter is a useful precaution ; as it may aid an omission in the body of the bill, and cannot occasion inconvenience.   And it has been holden, that if the sum in the superscription of the bill be different from that in the body, the sum mentioned in the body would be taken to be, *prima facie,* the sum payable." *Beawes' L. M. s.* 193.   4 *Petersd.* 276. n.   The writer strongly recommends, that the sum be placed in the body of the note or bill ; and to make it more clear, he also advises to put it in figures in the margin, not because the margin is to govern ; for he says it is not to govern, or rather, that the sum in the body is *prima facie* to govern.   The aid, then, the margin is to give, is, to remove an ambiguity in the body of the instrument, or to clear up a doubt,—not to supply a blank. If that was intended, how is it reconcileable with what he says has been determined, that the sum in the body is *prima facie* to govern ?   We understand the author to mean, that we are to look at the body of the instrument as our guide ; but as that may be ambiguous or defective, the margin may serve to aid or explain it.   If they actually differ, the former is *prima facie* to govern ; but, like all other *prima facie* evidence, it must yield to better evidence.   That the sum in the margin will assist in removing an ambiguity, is shewn from *Elliot's* case.   *Leach's C. L.* 185.   There, the note in the body of it, was for fifty      ; in the margin, £50.   But there have been numerous cases where such mistakes were corrected, though there was no sum in the margin to aid.   Thus, a note for " *threty-*two *ponds,* four shillings and seven pence," was treated as a note for £32. 4. 7.   *Hulbert* v. *Long, Cro. Jac.* 607. And a bill made for " *sewtene* pounds," was held to be a good

bill for seventeen pounds. *Osborn's* case, 10 *Co.* 133. So New-London, July, 1839.
also a note given for 25. 17. & 3. has been adjudged to be a
note for £25. 17. and 3. *Phipps* v. *Tanner,* 5 *Car. & P.* The Norwich Bank
v.
Hyde.
488. See also *Booth* v. *Wallace,* 2 *Root* 247. *Bigelow* v.
*Benedict* & al. 6 *Conn. Rep.* 116. 120.

*Elliot's* case has been much relied upon, by the counsel for
the plaintiffs. The body of the note purported to be for 50   ;
the margin, for £50. The prisoner's counsel claimed, that it
was not a note for any sum of money; at least, not for £50.
On the trial, it was left to the jury to say, whether it purported
to be a note for that sum : and a majority of the judges inclin-
ed to the opinion that the omission of the word " pounds," in
the body of the note, would not have exculpated the prisoner;
but it was a matter to be left to the jury whether it purported
to be a note for fifty pounds, or any other sum. But they all
agreed, that the £50 in the margin, removed any doubt; and
shewed that 50   was intended for fifty pounds. 2 *East's
P. C.* 952. This was a prosecution for forgery; and the
public, as it respects this part of the case, had only to shew,
that the instrument forged bore such a resemblance to a genu-
ine note as would induce persons of ordinary observation to
take it as a genuine instrument. 2 *New Rep.* 95. n. 2 *Stark.
Ev.* 178. Nor do the judges, even with the aid of the margin,
decide, as matter of law, that this is a note for £50.; but that
was purposely left to the jury. A major part thought, that
without reference to the margin, the case was properly decid-
ed ; but that such reference removed all doubt. These are the
principal authorities relied upon by the plaintiffs.

There is another class of cases, where *memoranda* are
made upon notes or bills, and a question has arisen how far
they become part of the instrument; such as the following on
a note " payable at Messrs. *B. & C.* bankers, *London.*" It
was held, that this did not make part of the contract. *Wil-
liams* v. *Waring,* 10 *Barn. & Cres.* 2. And where a bill
with such a *memorandum,* was declared on as a bill payable
at such a house, it was held to be a misdescription. *Exon* v.
*Russell,* 4 *Mau. & Selw.* 504. *Price* v. *Mitchell,* 4 *Campb.*
200. The supreme court in *Massachusetts* have indeed de-
cided, that the words " foreign bills" at the bottom of a note,
were to be taken as a part of it. *Jones* v. *Fales,* 4 *Mass.
Rep.* 245. This, however, was by a divided opinion, and

*New-London, July, 1839.*

The Norwich Bank

*v.*

Hyde.

upon the ground that these words could mean nothing, unless that construction was given to them. The same court, however, has holden, that the word "renewal" on a note could not affect its negotiability. *Pierce* v. *Butler*, 14 *Mass. Rep.* 312.

Not finding that the authorities require us to say, that this is to be treated in the same manner as if it were an express promise to pay the sum declared upon, we do not feel authorized, upon any principle, to introduce such a precedent.

But it is asked, shall a party, who has advanced money upon such instrument, lose it, or be deprived, by this construction, of his security? To this we answer, certainly not. If there has been a mistake in the instrument, a court of chancery may rectify it. But in our view, there is no necessity for resorting to a court of chancery. If the facts be such that the plaintiffs have advanced their money *bona fide* upon the strength of this note and indorsement, we see no difficulty in their case. They have in their hands the materials to make their note and declaration correspond ; although in the present state of this note, they might as well prove their case, by introducing the bare name of the maker upon one side of a piece of paper and that of the defendant on the other. And yet in that case, upon well settled principles, a *bona fide* holder might fill up such a paper so as to shape it to this case; the rule being, that where a man gives his name in blank, it is a letter of credit for an indefinite amount. *Russel* v. *Langstaffe, Doug.* 514. *Mitchell* v. *Culver*, 7 *Cowen* 336. So in case of a blank indorsement, it has been frequently holden, that until filled up its import is not certain ; but it may be filled with a power of attorney, or an assignment,—at least, as it regards a *bona fide* holder. So where the name of a payee is left blank in a bill or note, any *bona fide* holder may fill up the blank with his own name. *Cruchley* v. *Clarence*, 2 *Mau. & Selw.* 90. *Crutchly* v. *Mann*, 5 *Taun.* 529. But until it is so filled up, it is mere waste paper. 1 *H. Bla.* 608. So too, if a bill is drawn in blank, but on a £20 stamp, this will authorize its being filled up with a bill to that amount. *Bayley on Bills*, 36. But if there was no such limitation, any sum might have been inserted. *Farmers and Mechanics Bank* v. *Schuyler*, 7 *Cowen* 337. n.

In this case, there was a note, except that the sum was in

blank.    The *bona fide* holder might then have filled it up for
any amount agreed upon between him and the maker, had it not been for the margin.    The *memorandum* in the margin
shewed, that the indorser never agreed to go beyond that amount : at least, it raised a strong presumption of that fact. We see not, therefore, why the holders of this note might not fill up this blank with any sum not exceeding the limitation in the margin, which the transaction between them and the person from whom they received it, will warrant.    This will make the margin come in aid of the defect in the note, and will enable the plaintiffs to have entire justice done to them. Such seem to have been the views of the supreme court of *New-York*, where a note was drawn for eight      ; and the holder filled up the blank with *hundred dollars,* so as to make it read eight hundred dollars.    Evidence was admitted to shew, that this was intended, when the note was drawn.    *Boyd* v. *Brotherson*, 10 *Wend.* 93.    That case differs from this only, that here the sum in the margin would prevent the insertion of a greater sum in the note ; unless indeed, that was shewn to have been added by mistake.

Thus we see, that the plaintiffs, at present, do not produce a note corresponding with that declared upon.    But we see also, that it is in their power to make it such as they have described, if the facts in the case are what it is supposed they are. We therefore advise a new trial.

In this opinion the other Judges, after several consultations, ultimately concurred or acquiesced, except HUNTINGTON, J., who gave no opinion, being related to stockholders in the *Norwich Bank.*

New trial to be granted.