PLANTERS AND MERCHANTS' BANK OF MOBILE
v. CLARKE.

1. A deed conveying a plantation, &c., to trustees, for the benefit of certain credi-
tors of the grantor, is not void merely because it provides that the trustees may,
*if they think proper*, permit the grantor to reside upon the plantation, and have
the management thereof, under the supervision of the trustees, until the growing
crop is sold.

2. A deed conveyed in trust all the estate of a debtor, consisting of "lands, slaves,
carriage, wagon, cart, mules, horses, hogs, cattle, all plantation and farming
utensils, with the crop of corn, cotton and grain, growing on the plantation ;" and
provided that the property thus conveyed should not be sold, until the estate of
the sureties and indorsers intended to be secured, were levied on by executions
on judgments obtained against them : *Held*, that the deed was not obnoxious to
the objection of being made to " delay, hinder or defraud creditors."

Writ of error to the Circuit Court of Marengo.

A WRIT of *fieri facias* at the suit of the plaintiff in error,
was issued from the Circuit Court of Mobile, on the 8th of June,
1843, requiring the sum of four thousand, two hundred and
twenty-four 94-100 dollars, with ten 18-100 dollars costs, to be
made of the goods and chattels of Robert Clarke and Thomas
Clarke. This *fi. fa.* was placed in the hands of the sheriff of
Marengo, on the 13th of the same month, and on the 20th, was
levied on sundry slaves, (whose names are distinctly stated,)
as the property of Robert Clarke. The defendant in error in-
terposed a claim to all of the slaves, and entered into bond with
sureties for the prosecution thereof, pursuant to the statute.
An issue being made up for the trial of the right and submitted
to a jury, a verdict was returned in favor of the claimant, and
judgment rendered accordingly.

On the trial a bill of exceptions was sealed at the instance of
the plaintiff in execution, from which it appears among other
things, that the claimant offered to read to the jury a deed of
trust dated the 20th day of May, 1843, between Robert Clarke
of the first part, Wm. E. Clarke of the second part, and Richard

Clarke, of the county of Perry, Leland Trippe, Thomas J. Mc-Farland, Elam Lockhart, Wm. C. Trokes, of the county of Marengo, Alabama, and Wm. Clarke of the county of Dinwiddie, in the State of Virginia. This deed recites, that Richard Clarke, Trippe, Lockett, McFarland and Trokes, had become liable at different times as sureties of the grantor, for the payment of certain notes; that McFarland was also bound as his surety in certain bonds for writs of error; and that some of the beneficiaries in the deed were liable as the indorsers and acceptors in certain bills of exchange, particularly described. To secure the several persons named from any loss or damage in consequence of their liability, and to secure the payment of debts due to some of them as creditors, the grantor conveyed to the party of the second part all his estate, consisting of lands, slaves, carriage, wagon, cart, mules, horses, hogs, cattle, all household and kitchen furniture, all plantation and farming utensils, with the crop of corn, cotton and grain then growing on his plantation.

It is provided by the deed, that "the party of the second part shall take into his possession the property conveyed, and the rents, issues, and profits thereof, until the sale of the same as hereinafter provided, or performance of the condition of the said party of the first part as shall be hereafter set forth. The said party of the second part shall, if he think proper so to do, permit the said party of the first part to reside upon said plantation, and to have the management, (under his supervision however,) of the crop growing thereon, until a sale of the same as hereinafter provided." It is further provided, that the trustee shall receive the proceeds of the growing crop of cotton and apply the same as follows, viz: 1. To the payment of all judgments, executions and debts of the grantor, for which McFarland is his surety. 2. To the payment of the debt due to John S. Butler, as the grantor's overseer. 3. To the payment of the debt due Graham and Chambers, for which Richard Clarke is the surety. 4. To the payment of the bill of which Trippe is acceptor, and indorsed by Clarke, Lockhart and Trokes; and 5thly, to the payment of the debt due to Wm. Clarke.

Should an execution be levied on McFarland's property in a case in which he is bound for the grantor, then the trustee

on his application was authorized to sell enough of the property conveyed to pay the same.    The trustee was to pay the necessary expenses of conducting the plantation out of the proceeds of the crop to be growed thereon.    It is provided that if the grantor should pay the debts, &c., the deed should be void, without appointing a time within which they shall be paid.

The deed concludes with the following provision, " It is further stipulated and agreed that the meaning and intention of the clause herein, in which it is said, that the said party of the second part shall sell the property hereby conveyed on the application of either of the parties of the party of the third part, is, that such application shall not be made until executions founded on suits instituted on the instruments on which said parties have become securities as aforesaid, shall be levied on the property of the said parties, or either of them; and then after such application it shall be the duty of the said party of the second part to sell as before directed."

The execution of the deed was acknowledged shortly after its execution, and duly registered on the 1st June, 1843.

The plaintiff objected to the introduction of the deed as evidence, upon the ground that it disclosed upon its face evidence of an intention to delay, hinder or defraud the creditors of the grantor, and was therefore void; but the objection, was over-ruled, and the deed permitted to go to the jury.    It was shown by the plaintiff, that Robert Clarke was in possession of the property in question at the time the levy was made, and what was its value, &c.    The claimant adduced testimony tending to show that the debts intended to be provided for by the deed, were correct; and that upon the execution of the deed of trust, the property in controversy went into the possession of the trustee, and by the latter was returned to the possession of the grantor as his agent, with whom the possession has since remained.    The plaintiff prayed the Court to charge the jury, that the deed of trust in question contained evidence upon its face of an intention on the part of the grantor, to hinder and delay his creditors, and is therefore void in law; which instruction the Court refused, and charged the jury, that if they believed from all the testimony the deed was made in good faith, and to secure honest and *bona fide* debts, their verdict ought to be for the claimant.

F. S. Lyon, for the plaintiff in error, made the following points: 1. The deed upon its face reserves a benefit to the grantor, in providing that he may retain possession, and for the payment of the expenses of conducting the plantation while he retained the possession; and is therefore void. [1 Stew. & P. Rep. 139.]

2. The deed is void because it conveys property which must necessarily be consumed in the use, such as corn, grain, &c.; and contains such provisions as secured the possession to the grantor for a longer period than was necessary to mature the growing crop—a possession until the notes and bills were sued to judgment, and executions levied upon the estate of the sureties and indorsers. [4 Yerger's Rep. 541 ; 5 Ala. Rep. 297.]

3. The deed is also obnoxious to the objection of being intended to hinder and delay creditors, in providing that the trustee should not sell until the property of the sureties or indorsers were levied on; and in also providing that it should be void if the grantor thought proper to pay the debts before suits, &c.

Manning, for the defendant in error, insisted that fraud was a question of intention, and generally the facts must be ascertained by the verdict of a jury. It was however admitted that if a deed carry on its face irresistible evidence of fraud, the Court may pronounce it fraudulent. [1 Stew. Rep. 79 ; 1 Spear's Rep. 203-4.]

The deed in the present case is free from any intrinsic objection. 1. It gives the entire control of the property conveyed to the trustee, and the clause which declares that he may, *if he thinks proper*, and under his supervision, permit the grantor to manage the plantation, confers no benefit on the latter, or power on the trustee, which he would not have possessed if it had been entirely omitted. The grantor did not stipulate for any compensation, and it cannot be intended, from the insertion of the clause, that he supposed his management would be more advantageous. 2. The fair inference from the deed is, that the property should be kept together unsold, until the crop of cotton growing on the land when it was executed, should be gathered and sold, (5 Ala. Rep. 303;) unless it should be necessary to sell sooner, to save the parties of the third part from

loss. But after that time, under all circumstances, a sale should be made by the trustee, if the grantor failed to pay the debts. 3. It is provided that if a part of the property be sold, to pay part of the debts, and a surplus of the proceeds remain in the trustee's hands, instead of paying it to the grantor, it shall be applied to discharge the other liabilities provided for by the deed. 4. The last provision means nothing more than, that the sureties shall not have the grantor's property levied on, until they shall have paid, or be in danger of sustaining damage by reason of a levy on their property for the grantor's debt. In this respect the deed is not prejudicial to the parties of the third part, but gives a sure and speedy remedy by a sale of the property conveyed, without in any manner interfering with the right of the creditor to sue.

Taken as a whole, there is nothing on the face of the deed, to induce the belief that it was not executed in the most perfect good faith; and if it is suspicious, it was competent to sustain it by proof.

The grantor passed from himself all the property embraced by the deed, and provided that it should not revest in him until all the debts, &c. were paid. In this there is no perceivable intention to delay, or hinder the creditors of the grantor in the collection of their debts; but rather to make all the grantor's property liable for his debts, and ultimately to devote it to their payment.

An instrument is to be construed *ut res magis valeat, quam pereat.* Courts of equity have considered a power limited in terms, a general power, where such construction has been necessary to carry out the intention. [1 Johns. Ch. Rep. 129; 7 Id. 33, *et post.*]

COLLIER, C. J.—1. In Richards v. Hazzard, 1 Stew. & P. Rep. 139, the deed assigned all the property of the debtor to a third person, in trust for certain creditors, reserving to the grantor the sum of two thousand dollars *per annum,* for the support of himself and family, during the continuance of the trust. There was then a provision appropriating the residue of the debtor's estate to the payment of his creditors generally. The Court said, " That by reason of the reservation contained in the deed, it must be considered fraudulent and void, as against

97

the sound policy of the law, and against the statute of frauds, being obviously made with intent to delay, hinder or defraud creditors of their just and legal actions."

In the case before us, the deed does not stipulate for a benefit to the grantor. It expressly provides that the trustee shall take possession of and hold the property conveyed, and the profits, &c., until the sale thereof, or until the grantor shall pay the debts intended to be provided for, or counter-secured. It is not absolutely agreed that the grantor shall have the possession or control of the property, but merely that the trustee, if he think proper, shall permit him to reside upon the plantation and have the management thereof, under the trustee's supervision, until the growing crop shall be sold. Here it must be observed is no stipulation binding upon the trustee, but leaves it to his discretion whether he will permit the grantor to reside upon the plantation and manage the crop in subordination to his authority. If the deed had been silent upon this point, it would doubtless have been competent for the trustee to have employed the grantor as his agent in guiding the operations of the farm, or in performing some other duty incident to the trust, without affecting in any manner the validity of the deed, or the security which it afforded to the *cestuis que trust.* Can then, a provision, which possesses no potency in itself, and which cannot, in the slightest degree, change the operation of the deed, stamp it with the impress of fraud, or impair its legal efficacy ?

The deed was executed after the crop for the year must have been planted, and it might have been for the interest of the beneficiaries that the grantor should have been permitted to continue his residence upon the plantation, and direct the operations there ; especially if he asked no remuneration for his services. In Ashurst v. Martin, 9 Porter, 566, the deed purported to be a conveyance of the estate of the debtor, in trust to pay creditors, and contained, among others, a stipulation that the trustee should not be responsible for the acts of his agents, nor be charged for any moneys except such as should be actually received by him. It was held that this provision did not make the trustee irresponsible for any agent that might be selected by him, but only for such as were " necessary to enable him to execute the trust, selected in good faith,

with a due regard to their fitness, and a proper supervision exercised over them." This being the case, the appointment of even the debtor himself would not defeat the trust estate, and consequent right of preferred creditors. The same result would follow, although the agency might be a source of profit; for if the deed does not, (as we have seen,) secure it to the grantor, no *post factum* act, in which the beneficiaries did not participate, though under some circumstances it might be construed a fraud, would divest their rights.

2. The deed does not convey the corn and other provisions, which the grantor had in store at the time it was executed, but the crop of corn, &c. then growing; but if it did, it could not affect its validity. In Ravisies v. Alston, 5 Ala. Rep. 297, the deed conveyed lands, slaves, mules, horses, plantation utensils, &c. with the right to sell and dispose of the crop to be grown during the current year, to pay the debts secured. We said, " The corn, fodder, bacon, &c. were necessary to provision the plantation, and to the making of the crop, for which purpose, and not for the use of the grantor, they are reserved in the deed. These articles, though destroyed by the use, during the year, would not be converted into money, but would be reproduced by the cultivation of the plantation. How far it might be allowable to extend assignments of this character, or whether they could continue beyond a single crop, it is not necessary now to determine, but within that limit, and with the power given by statute to every creditor to pay the debt secured by the deed, and substitute himself to the condition of the preferred creditor, it does not appear to be liable to abuse." The case cited from 4th Yerger is noticed in Ravisies v. Alston, and shown to be distinguishable from it.

In respect to the growing crop of corn, &c., it may be remarked, that, when gathered, it was not necessarily to be consumed on the plantation, but when the state of things existed which authorized the beneficiaries in the deed, or any one of them to demand a sale, it was within the power and discretion of the trustee to sell the corn, &c., instead of other property, where a sale of all was not necessary. And if no sale was demanded, so that it was proper to keep the slaves, &c., on the plantation, humanity and law require that they should be fed; in fact their labor could not be profitable unless their wants

were supplied; under such circumstances we can conceive of no objection in thus appropriating the provisions grown on the farm. The imputation of fraud founded on this ground, is gratuitous, when it is recollected that what is consumed is necessary to the subsistence of the slaves, mules, &c., and is paid for, not only by the reproduction of other provisions, but of something else for market.

The possession and employment of the property by the trustee, was not under the deed, necessarily to continue longer than the then current year. The provision, in respect to a sale, might or might not be executed sooner, depending to a great extent, upon the promptness with which the creditors of the grantor, whose demands are mentioned in the deed, might attempt to enforce them.

3. In providing that the estate of the grantor shall not be sold, until the property of his sureties and indorsers were levied on by executions on judgments obtained against them, the deed is not obnoxious to the objection of being made to "delay, hinder or defraud creditors," in the legal sense of those terms. This conclusion is the clear result of previous adjudications, with which we are well satisfied; among which are Tarver v. Roffe, and Dubose v. Dubose, at this term.

The judgment of the Circuit Court is consequently affirmed.