# Pugh, Stone & Co. v. Harwell & Clark.

*Trial of Rights of Property.*

1. *Mortgages—Rights of Mortgagor.*—Where a mortgagor, who is

[Pugh, Stone & Co. v. Harwell & Clark.]

engaged in farming, executes a mortgage upon corn, fodder, cotton and hogs &c., then on hand, and also upon the crops to be made by him during the current year, and it is the intention of the parties that the property is to remain in possession of the mortgagor until default, it will be presumed in the absence of a stipulation to the contrary, that the mortgagor has the right to use and consume such part of such property as is necessary in cultivating and gathering the crop, covered by the mortgage.

2. *Fraudulent conveyance—Reservation of benefit to grantor.*—A mortgage executed by an insolvent grantor upon corn, cotton seed, fodder &c., and upon a crop to be grown, which gives the mortgagor the right to consume the property covered thereby in making and gathering the crop, does not reserve such a benefit to the grantor as will make the mortgage fraudulent and void as to his other creditors—and the same rule applies where a mortgage on a crop to be grown, consisting of corn, fodder and cotton, anthorizes the consumption by the mortgagor of corn and fodder maturing before, which is necessary in harvesting a crop, and ginning, packing and delivering the cotton.

3. *Same—Badge of fraud.*—A short delay in its enforcement after the law day of a mortgage executed by an insolvent, does not render the instrument void as to other creditors of the grantor.

4. *Same—Evidence of a secret trust.*—A sale by the mortgagor of a part of the property covered by the mortgage, without the knowledge or consent of the mortgagee, is no evidence of a secret trust in favor of the mortgagor—And proof of the fact that such property was delivered at a depot in the town where the mortgagee lived, and about half a mile from his place of business, is not sufficient to charge him with notice of the disposition.

5. *Same.*—The fact that the mortgagee sells the mortgaged property to a third person, for the amount due on his debt, but for less than its value, and that such person by a distinct transaction, conveys it to the mortgagor, is no evidence of fraud.

6. *Same.*—Where a mortgagor conveys his entire crop to be grown on his plantation, and evidence is given that more cotton was raised on the place than was delivered to the mortgagee, if such evidence has any force as showing a reservation of a benefit to the grantor, it is certainly insufficient for that purpose without further proof that the mortgage covered all the cotton grown on the place.

APPEAL from Tallapoosa Circuit Court.

TRIED before the Hon. N. D. DENSON.

The appellees, Harwell and Clark recovered judgments against R. W. Milner, under which executio s were levied upon a lot of corn, as the property of the defendants. The appellants, Pugh Stone and Co. thereupon interposed a claim to such corn, and an issue to try the right of property therein, was made between them. The

[Pugh, Stone & Co. v. Harwell & Clark.]

claimants relied upon three mortgages two of which were made in January and May 1892, executed to them by R. W. Milner and J. W. Pace, payable on October 15th, 1892, and embraced certain mules, wagons, and crops to be raised during 1892. They also introduced a mortgage executed by Milner to Sturdivant Bros. and by them assigned to claimants, which is sufficiently set out in the opinion. They also proved that the mortgage debts were in part unpaid. That at the time of the execution of the mortgages there was no agreement that the mortgagor could consume any of the property, and that they at no time agreed or consented that the mortgagor could sell any of it.

The facts shown in rebuttal by the plaintiffs in execution are sufficiently shown by the opinion.

H. J. GILLAM, for appellants—No such reservation of a benefit to the mortgagor as would defeat the mortgage, was shown.—*Thomas v. Rembert*, 63 Ala. 561; *Cooper v. Berney*, Nat. Bk. 11 So. Rep. 760; *Radisus v. Alston*, 5 Ala. 297 : *Hodge v. Coleman & Carroll*, 76 Ala. 103; *Meyer v. Sulzbacher*, *Ib.* 120; *Crawford v. Kirksey*, 55 Ala. 293.

JNO. A. TERRELL, T. L. BULGER and GEO. P. HARRISON, *contra*.

McCLELLAN, J.—The mortgage executed by Milner, the defendant, to Sturdivant Bros. bears date as of December 1st., 1891. It was made to secure a note of even date, which was due and payable October 15th, 1892. And this latter date, October 15th, 1892, is the law day of the mortgage. By the terms of the mortgage the property covered by it was retained by the mortgagor, the mortgagees having no right to its possession unless and until the mortgagor should fail to pay the secured note at maturity, to-wit, October 15th, 1892. Among the items of property embraced in and conveyed by the mortgage were the following as set down therein : "About 16 head of cattle [other than work oxen] fifty head of stock hogs, 1,000 bushels of corn now on my place. 2,000 bushels of cotton seed, and 4,000 bundles of fodder; all at this time on my place." This mortgage clearly evidences the contemplation of the parties that

Milner should continue his farming operations during the year 1892, and his entire crop of corn, cotton, oats, fodder, cotton seed and all other products which should be raised by him during the year 1892 is covered and conveyed by the instrument. There seems not to have been, at least there is no evidence that there was, any express understanding between the parties that Millner should dispose of or consume any of the property thus mortgaged and left in his possession; but even upon the face of the paper the conclusion that it was in the contemplation both of the mortgagees and the mortgagor that the latter should use and consume certainly the corn, fodder and cotton seed and probably the cattle and hogs, in carrying on his farm for the ensuing year, is not to be avoided. It is out of all reason to suppose that all of this perishable and consumable property, all of prime necessity from day to day in the business the mortgagor was to continue in, should be kept by him for nearly a year, and then delivered to the mortgagees, especially when it is considered that the only benefit the mortgagor could derive from retaining it lay in its consumption, and that, but for this implied right as against the mortgagees, it would have been to his advantage, and theirs to have applied it to the debt at the time the mortgage was made. Not only does the mortgage show the purpose of the parties that this property should be consumed, but Sturdivant testified that it was the contemplation and expectation of the mortgagees that Milner would and should use the corn, fodder and cotton seed, and it is shown that he not only consumed all this property "in feeding the stock embraced in said mortgage, and his family and his employés on the premises in producing his said crop for the year 1892," but also that "he had slaughtered and consumed most of said cattle and hogs for the use of himself and employés on the farm in raising and harvesting his said crop for 1892." Milner was insolvent at the time of the execution of this mortgage, and the debts of plaintiffs against him for which executions have been levied on property embraced in it, were then in existence.

On these facts it is insisted for the plaintiffs that this mortgage was void *ab initio* on its face; and there is much parity of reasoning between the considerations which

make that conclusion at least plausible and those which support the well established rule that where an insolvent debtor. mortgages to a creditor a stock of goods which the mortgagee is not to take into his possession till a future day, there is an implied right in the mortgagor to continue selling the property as his own which renders the instrument void as to other creditors, on the ground that the transaction involves a reservation of a benefit to the grantor and is indeed, a conveyance in trust to his use.—*Benedict Hall & Co. v. Renfro Bros.*, 75 Ala. 121; *Owens v. Hobbie & Teague*, 82 Ala. 466; *Bank v. Eborn*, 84 Ala. 529; *Woodall v. Kelly & Co.*, 85 Ala. 368; *Murray, Dibbrell, & Co.v. McNealy & Cureton*, 86 Ala. 234; *Mc-Dermott v. Eborn*, 90 Ala. 258. But the point has been ruled otherwise in respect of mortgages and the like on farm supplies, such as corn, fodder, cotton seed, bacon &c. &c., where the instrument also covers a growing crop or a crop to be grown, and such supplies are to be used either according to express provision of the mortgage, or, as here, by necessary implication, in the planting, cultivating and harvesting of the crop embraced in the conveyance. The leading case on this subject in Alabama is that of *Ravisies v. Alston, Trustee*, 5 Ala. 297, which involved a trial of the right of property between an execution creditor of the grantor in a deed of trust to secure another c `editor, and the trustee in the deed. The facts are thus stated by the court: "The claimant introduced a deed executed by the defendant in execution on April 8th, 1840, to the claimant, in trust, to secure certain debts therein mentioned, which was also executed by the trustee and the *cestuis que trust.* By the deed the defendant in execution conveyed a considerable quantity of land and slaves, horses, mules, oxen, cattle, sheep and hogs, wagons and plantation utensils; also fifteen hundred bushels of corn, one thousand pounds of fodder and six thousand pounds of bacon, and all right, title, claim and control of the crops to be raised the present year on the plantation on which he now resides, and hereby abandons all claim, right, title and interest to the same to the said trustees and their assigns." It was further stipulated that the maker of the deed should remain in possession af the property before mentioned until the 1st of March, 18 41, and until he gives possession to the said trustees, after making default in the pay-

[Pugh, Stone & Co. v. Harwell & Clark.]

ment of the debts before mentioned. The debts secured by the deed were due and becoming due during the ensuing year, and on a considerable portion the beneficiaries of the deed were sureties." It was further stipulated that if any of the property conveyed should be left after paying the secured debts, "It should be and remain the property of the grantor, all the purposes of the trust having been satisfied." It was contended for the plaintiff in that case, as it is for the plaintiff here—the facts of the two cases being strikingly and singularly alike—"that as a portion of the property conveyed in the deed was perishable in its nature, such as corn, fodder, bacon &c. and would be destroyed in its use, and as the possession of it was secured to the grantor for one year, and consequently the right to use it—that such a provision was fraudulent as against creditors, and vitiated the entire deed." And upon this contention the court, by Ormond, J., thus delivered itself: "We do not doubt that a stipulation in a deed of trust, reserving property for the use of the grantor, which must be exhausted in such use, is fraudulent and void, and we agree entirely in the views taken by the Supreme Court of Tennessee, in the case of *Somerville v. Horton*, [4 Yerger, 550.] In that case, the articles attempted to be placed beyond the reach of creditors, and secured for the use of the grantor who kept a tavern, were whiskey, brandy, flour, wine, sugar, coffee, candles, wood, hay, &c. The court says: "The circumstances in this case, that the debtor must necessarily have used, and of course consumed the articles mortgaged, stamp this deed with a character not to be mistaken, as intended to cover the articles in a course of daily and rapid consumption from seizure by execution, until he could convert them to his own use, in supplying his house of entertainment."

"It is only necessary to contrast that case with the present to perceive the difference between them. The property conveyed by this deed, consisted of land, slaves, mules, horses, plantation utensils, &c., with the right to sell and dispose of the crop to be grown during the current year, to pay the debts secured by the deed. The corn, fodder, bacon, &c., were necessary to provision the plantation, and to the making of the crop, for which purpose, and not for the use of the grantor, they are reserved in the deed. It may also be remarked, that, un-

like the case cited from 4 Yerger, these articles, although destroyed by the use during the year, would not be converted into money, but would be reproduced by the cultivation of the plantation. How far it might be allowable to extend assignments of this character, or whether they could continue beyond a single crop, it is not necessary now to determine, but within that limit, and with the power given by statute to every creditor to pay the debt secured by the deed, and substitute himself to the condition of the preferred creditor, it does not appear to be liable to abuse.

"The principle of the case of *Cunningham v. Freeborn*, (11 Wend. 240,) affords countenance to the view here taken. In that case, the conveyance was of work-shops, furnaces, &c., with the raw material, with power to the trustee to work up the raw materials, and sell the articles to be thus manufactured, to pay the debts secured by the deed, and the Supreme Court of New York, sustained the deed of assignment."

This adjudication on the point with which we are concerned was quoted with approval in the case of *Planters & Merchants Bank v. Clark*, 7 Ala. 765, Collier, C. J., delivering the opinion, it is referred to, and the principle it declares is apparently approved, in *Graham v. Lockhart*, 8 Ala. 9 ; and in the much later case of *Perry Insurance & Trust Co. v. Foster*, 58 Ala. 502, it received the full endorsement of this court, the question being fairly presented by the record and the fate of the appeal turning upon it. There was a conveyance in trust to secure certain of the grantors' creditors of two or more plantations, the live stock, farming utensils, the corn and fodder on hand, and the crop to be grown that year. One ground of the attack made on the instrument was that it impliedly authorized the grantors to consume a part of the property conveyed in the prosecution of their business, the cultivation and harvesting of a crop during the current year ; and upon this the court, by Brickell, C. J., said : "The assignment contemplates that the planting operations of the debtors should be continued for the current year, under their supervision, and that future advances should be made by the creditor, for their successful prosecution : and it is this feature which is supposed to be inconsistent with an absolute, unconditional appropriation of the property to the payment of the

enumerated debts, and is, in effect, a reservation for the use of the debtors. Conveyances with stipulations for the continuance of planting for the current year, when the property conveyed is of the kind employed in that business, have been too often supported in this court for their validity now to be questioned.—*Ravisies v. Alston*, 5 Ala. 297; *P. & M. Bank v. Clark*, 7 Ala. 765; *DuBose v. DuBose*, Ib. 235; *Graham v. Lockhart*, 8 Ala. 9. If the crops to be produced are, with the existing property, to be devoted to the payment of the secured debts, it has not been supposed such a stipulation is a reservation of a benefit to the debtor, though thereby the residuum which must revert to him may be increased. It is not unusual in assignments to provide that the assignees, or the debtor, under their direction, may continue the business; and if it appears this is done, not for the interest and benefit of the debtor, and to the prejudice of the unsecured creditors, but to promote the interests of the creditors who are preferred, they are sustained.—Burrill on Assignments, 281. In *Cunningham v. Freeborn*, 11 Wend. 240, the property assigned was a foundry, and the assignees were authorized to continue the business, for the purpose of working up materials, and completing the manufacture of any of the assigned property, and to pay such expenses as might be incurred thereby. Speaking of this provision of the assignment, Justice Nelson said: "In all this, I can see no violation of law, or of honesty and fairness aside from the principle of preference, which we are not at liberty to question. The establishment was large, and embraced the whole of the fund out of which the debts must be paid, if at all. It was a kind of property not readily convertible into money, and valuable and profitable only in the business in which it had been employed, and we cannot say that this provision in the assignment was injudicious, much less illegal. The chance of a sale might be greater and better, by keeping the establishment in operation, than in the abandonment of it." A similar decision was made in *DeForest v. Bacon*, 2 Conn. 633; *Kendall v. New England Carpet Co.*, 13 Conn. 283; *Foster v. Saco Manufacturing Co.*, 12 Pick. 451, and *Woodward v. Marshal*, 22 Pick. 468. The court of appeals in New York have overruled *Cunningham v. Freeborn*, but on reasoning which is in conflict with the views this court has uni-

formly taken of these voluntary conveyances by insolvent debtors, for the security of creditors.—*Dunham v. Waterman,* 17 New York, 9.''

We are constrained by these decisions to hold that there was nothing on the face of the mortgage to Sturdivant Bros. to avoid it for fraud, and that the use which Milner made of a part of the property embraced in it, being in accordance with the implied terms of the instrument, could not invalidate it in the hands of the mortgagees or their assigns, Pugh, Stone & Co., even though both Sturdivant Bros. and their assignees were fully advised of the fact of such use before and after the assignment.

It is not pretended that either of the two mortgages made by Milner directly to the claimants was fraudulent and void on its face. The evidence relied on by plaintiffs to show that these instruments, as well as the Sturdivant Bros. mortgage in the hands of the claimants, were tainted with fraud by facts *aliunde*, was: 1. That Pugh, Stone & Co. did not immediately upon the lapse of the law days proceed to foreclose the mortgages, and that Milner consumed some of the crops grown that year; but we do not understand that a short delay, such as is shown here, in proceeding after the law day to enforce the mortgages has the effect of rendering an otherwise valid instrument inoperative and void; and if it be conceded that the use of some of the crop by Milner as shown in the evidence, could, under any circumstances, destroy claimants' mortgages as to other property, or raise up a presumption or authorize an inference that such use was by virtue of a secret benefit reserved to the mortgagor, surely such result could not follow, such presumption could not arise nor inference be justified, in the absence of all evidence that the mortgagees consented to such use or even knew that the mortgagor had so used and consumed any part of the property. And, moreover, it would seem, on the principles declared above in respect of the Sturdivant mortgage, that where the mortgage is on a crop to be grown consisting of corn, fodder and the like and cotton, the necessary use and consumption of corn and fodder maturing before the farming operations of the year are completed in the harvesting of the crops embraced in the mortgage,—the picking, ginning, pressing and de-

livery of the cotton crop, for instance,—would not vitiate the instrument, even though expressly provided for therein, and if so, the mortgage without such stipulations could not be affected by such consumption of property whether with or without the knowledge or consent of the mortgagee.

2.   That Milner for his own account sold and disposed of some of the crop, to-wit, some cotton seed covered by claimants' mortgages.   Confessedly this fact of itself could not affect the validity of the mortgages.   Indeed, standing by itself it can perform no office in this case. If the mortgagee consented to this, or knowing of it, or having reason to believe it was about to be done, failed to object to its being done, the fact and this connection of the claimant with it, would be some evidence perhaps of a secret benefit reserved to the mortgagor; but there is really no evidence in the record before us that the claimants had any knowledge whatever that Milner proposed to sell or was selling or had sold cotton seed covered by the mortgages.   Such knowledge is unequivocally denied by the claimants as witnesses, and the only circumstances relied on by plaintiffs to bring knowledge or notice home to them is the fact that cotton seed was hauled from Milner's farm to the railway depot in the town of Dadeville and delivered to the railway for transportation, and the further fact that claimants lived in the town of Dadeville and their place of business was about one-half mile from the depot.   It requires no argument to show that this was no evidence of notice or knowledge on the part of claimants.   The extreme danger of allowing knowledge or notice to be imputed upon the mere possibility, as here, that the party sought to be charged might have known or had notice is obvious.

3.   It is insisted that the facts that the claimants finally took possession of and sold the mortgage property to Cosby, for $943, there being a senior mortgage upon it for about $150, that in Cosby's opinion it was worth $1,300, and that Cosby sold it back to Milner tend to show fraud.   There is not a particle of evidence or basis for inference that the sale by claimants to Cosby had any connection whatever with the sale by Cosby to Milner.   One transaction was early in January and the other was some months afterwards—"in the spring."   And all the parties swear that they were entirely separate and

distinct sales ; Milner having nothing to do and no concern in the first sale, and the claimants being equally without interest or concern in the second. And the fact that the claimants sold the property for $943 is, even upon the assumption that it was worth something more than that sum with the amount of the outstanding prior mortgage added, fully explained and accounted for, with entire consistence with honest and fair dealing, by the further undisputed fact that that sum was the precise amount of the balance due claimants under their mortgages.

4. It is shown that 120 bales of cotton were raised and packed on Milner's plantation during the year 1892. Claimants received sixty-two bales, and applied the proceeds thereof to the mortgage indebtedness. Sturdivant Bros., before transferring their mortgage to claimants on October 20, 1892, had been paid about $800 upon it. It is fair to assume that about twenty bales of cotton were applied to this payment. This leaves say thirty-eight bales of the 120 grown on the place not applied to the mortgage indebtedness ; and it is insisted that claimants allowed Milner to retain or dispose of this 38 bales, and that this is evidence of a secret reservation of a benefit by him. If the fact had otherwise any probative force, it is emasculated by the consideration that it is nowhere shown that the mortgages covered all the cotton grown on the plantation. To the contrary the instruments themselves afford evidence that others than Milner had interests in the cotton that was to be and was grown that year, and they convey only Milner's interest in crops grown by him or tenants under him or co-tenants with him. It may well be—there is nothing in the case to the contrary—that the 38 bales, which plaintiffs insist must have been taken by Milner in the execution of a secret trust, never belonged to or were taken or disposed of by Milner at all, but were the property of his tenants and co-tenants.

These are all the facts insisted upon by counsel as tending to show the secret reservation of a benefit by Milner; and, in our opinion, neither they nor any other circumstance shown in the case afford any evidence of the reservation or allowance of any secret benefit by or to the mortgagor, or tend in any degree to establish fraud

in any of the mortgages, none of which, as we have seen, are fraudulent on their faces.

These mortgages being thus valid upon the undisputed evidence, prior in point of time to the inception of plaintiffs' lien and vesting superior title to the property involved here in the claimants, the trial court should have given the affirmative charge requested by them.

Reversed and remanded.