## SNEDICOR v. BARNETT.

1. A surety to a writ of error bond, must be a resident citizen of the State.

Error to the Circuit Court of Greene.

THIS was an action by the defendant in error, against the plaintiff in error, Clerk of the County Court of Greene, for taking insufficient surety to a writ of error bond. Much testimony was given to prove the insolvency of the surety, but it need not be here set out, as the judgment of the court below, and of this court, turned upon the fact, shown by the evidence, that the surety taken by the clerk was not a resident citizen of Alabama.

The court charged the jury, that if the surety, Hunter, at the time he was taken, was not a citizen of the State of Alabama, and the plaintiff had not collected his money, they must find for the plaintiff, to which the defendant excepted, and which he now assigns as error.

THORNTON, with whom was HALE, for plaintiff in error. PECK, contra.

ORMOND, J.—The question presented is, whether the surety to writ of error bond, must be a citizen of the State? This depends upon the proper construction of our statutes. The act of 1820, (Clay's Dig. 307, § 6,) provides, that no judgment shall be suspended, by a writ of error, "unless the party applying for it, shall execute in the clerk's office a bond wtth *sufficient security*, conditioned," &c. The act of 1822, (Ib. § 7,) makes the clerk responsible for taking insufficient security, but permits him to defend himself by showing, that the person he took as security, "was generally reputed sufficient for the sum for which he was bound, at the time he was taken as security." The act of 1826, (Ib. 310, § 26, requires the Supreme Court, upon the affirmance of a judg-

Snedicor v. Barnett.

ment, to render judgment also against the sureties to the writ of error bond, and also required the Clerk of the Court, where the judgment was originally rendered, to issue execution, as well against the sureties, as the principal in the judgment.

Although this matter is not free from difficulty, we think it must be presumed, that the legislature had in view our own citizens, in the enactment. Foreigners, it is true, may have property in this State, to answer the execution which may be issued on the affirmed judgment; but the property of foreigners must be admitted to be more transitory, more unstable, and more liable to be removed, than that of our own citizens. Again, there is one execution, a *ca. sa.* which the judgment creditor would be deprived of, in the case of a nonresident, and although this writ has been by a recent statute rendered less valuable, as a means of coercing payment, it is still in force, and may be the only means of obtaining payment. This statute, however, should be construed by the law as it existed when it was passed, and then the right to sue out a *ca. sa.* existed in all its rigor, as a common law writ of execution.

Again, the clerk is allowed to justify, by proving that the surety was generally reputed good for the amount for which he was bound, when he received him. How could this test be applied with any certainty to a non-resident? How could it be known, what debts he might owe at the place of his residence? And yet it is only by this knowledge, that the solvency of any one can be known. It is true, that resident citizens may obtain a false credit, by the possession of property, owing at the same time debts not generally known in the community; but this insurmountable difficulty is greatly increased in the case of non-residents, as most of the means by which indebtedness becomes known in the community, do not in their case exist.

The principle of this decision reaches, indeed, far beyond this case. In no one of the numerous cases in which surety is required to be given, is it expressly required, that they shall be resident citizens, and yet it is obvious that the sureties of sheriffs, executors, administrators, guardians, &c. ought to be persons residing within the State. The case of a sure-

ty to a writ of error bond, is much more urgent than any of these cases, as additional security may be required in them, if the surety becomes doubtful. By a writ of error bond with surety, the *lien* of the judgment is gone, and if the surety is not good, the money is irretrievably lost.

These considerations, although we doubted at first, have led our minds to the conclusion, that the legislation upon this subject, as well as upon others, must, unless the contrary is expressed, be understood to be in reference to our own citizens.

Our statute provisions upon this subject, are evidently derived from the English statutes, of first James, and first Charles, providing for bail in error, our statute being almost a literal copy of that of 3 Chas. 1, c. 4, § 4, Tidd's Prac. 1073. The English statute does not, any more than ours, require that the "sureties" shall be resident in the kingdom, yet being considered as bail merely, and as such, if excepted to for insufficiency, required to justify, it follows necessarily, that they were required to be resident within the kingdom.

This conclusion, as it is decisive of the case, renders it unnecessary to consider the other points presented on the record. Let the judgment be affirmed.