# PRICE vs. MAZANGE & CO.

[GARNISHMENT ON JUDGMENT—CONTEST OF GARNISHEE'S ANSWER.]

| 31 | 701 |
| 99 | 112 |
| 31 | 701 |
| 105 | 208 |
| 31 | 701 |
| 108 | 87 |
| 31 | 701 |
| 112 | 573 |
| 31 | 701 |
| 123 | 138 |
| 124 | 594 |
| 31 | 701 |
| 138 | 346 |
| 31 | 701 |
| 143 | 459 |

1. *Competency of defendant as witness for garnishee.*—When the answer of a garnishee is contested by the plaintiff, and the validity of a mortgage executed by the defendant to the garnishee is controverted, the defendant is a competent witness for the garnishee, although the statute (Code, § 2292) declares him incompetent to testify for the mortgagee on the trial of a claim suit.

2. *General notoriety admissible to prove knowledge of fact.*—Where the validity of a mortgage is impeached for fraud, the fact that the mortgagor, at the time of its execution, " was notoriously insolvent," is admissible evidence, as tending to prove that such insolvency was known to the mortgagee. (Overruling *Stanley & Elliott v. The State*, 26 Ala. 26.)

3. *Admissibility of garnishee's answer as evidence.*—The answer of a garnishee, when controverted by the plaintiff, may be given in evidence by the plaintiff, but not by the garnishee himself.

4. *Party cannot impeach evidence adduced by himself.*—When the answer of a garnishee is adduced in evidence by the contesting plaintiff, he cannot discredit it in a request for instructions to the jury ; nor can the court, *ex mero motu*, as in favor of the plaintiff, give any charge to the jury which tends to discredit the answer.

5. *Evidence of property in foreign jurisdiction not admissible on issue contesting validity of mortgage.*—On the trial of an issue respecting the validity of a mortgage, between a judgment creditor of the mortgagor and the mortgagee as garnishee, the fact that the mortgagor, at the time of the execution of the mortgage, owned lands in Texas, is not admissible evidence for the garnishee.

6. *Charge referring legal question to jury.*—A charge which refers to the jury the construction of any provision in a mortgage, the validity of which is controverted before them, is erroneous.

7. *General assignments by insolvent debtors.*—Section 1556 of the Code, respecting general assignments by insolvent debtors, does not render void a general assignment which provides for a preference among creditors, but only declares that such assignment shall enure to the benefit of all the grantor's creditors equally ; consequently, where the validity of a mortgage is impeached for fraud, this statute can have no application.

8. *Validity of mortgage.*—A mortgage, executed by a debtor who is insolvent or in failing circumstances, to one of his creditors who has knowledge of his pecuniary condition, and whose debt is not due or bearing interest ; conveying the debtor's entire stock of goods, together " with such other goods and chattels as the said B. [mortgagor] may from time to time hereafter purchase and place in said store, to keep up and renew his stock in trade ; " fixing no law-day, but authorizing the mortgagee to sell, at public or private sale, on default being made in the payment of any of the notes and interest,—is fraudulent and void as against the existing creditors of the mortgagor.

APPEAL from the City Court of Mobile.
Tried before the Hon. ALEX. MCKINSTRY.

THE appellees in this case, having obtained two judgments against Charles H. Bostwick, at the November term, 1854, of said city court, amounting together to nearly $600, caused a garnishment to be thereon issued and served on Caleb Price, as the debtor of said Bostwick. The garnishee appeared, in answer to the summons, filed a written answer, and afterwards answered orally in open court. The substance of these answers was, that Bostwick, on the 20th July, 1854, being indebted to him in the sum of $6,407 96, by several promissory notes falling due at different times between that day and the 10th March, 1855, executed to him a mortgage on his entire stock of goods, to secure the payment of said notes; that the garnishee took possession of the stock of goods, on the 2d November, 1854, under the powers conferred on him by the mortgage, and proceeded to sell them at private sale; and that the amount realized from the sale of the goods, up to the time the answer was made, was not enough to pay the secured debts. The answer was contested by the plaintiffs; and on the trial of the issue formed on it, the garnishee reserved several exceptions to the rulings of the court, which present all the matters now assigned as error.

The mortgage from Bostwick to Price conveyed "all and singular the goods, wares and merchandise hereinafter particularly mentioned and expressed in the schedule hereunto annexed, marked 'A,' now being in the warehouses and store on the north side of Government street, and west of St. Emanuel street, in the city of Mobile; together with such other goods and chattels as the said Bostwick may, from time to time hereafter, purchase and place in the said store and warehouses, to keep up and renew his stock in trade; which goods, &c., so to be hereafter purchased, shall be subject to the same lien and disposition as those named in said schedule." The secured debts are described as being due "according to fifteen promissory notes, due and payable at the Bank of Mobile,

as follows: one for $132 41, due 6–9th August, 1854; one for $100, due 15–18th August, 1854; one for $129 96, due 16–19th August, 1854; one for $129 96, due 25–28th August, 1854; one for $129 96, due 3–6th September, 1854; one for $178 64, due 10–13th September, 1854; one for $132 41, due 13–16th September, 1854; one for $132 41, due 23–26th September, 1854; one for $542 44, due 3–6th October, 1854; one for $600, due 9–12th October, 1854; one for $711 13, due 10–13th November, 1854; one for $675, due 10–13th December, 1854; one for $937 88, due 10–13th January, 1855; one for $937 88, due 10–13th March, 1855." The condition of the mortgage was as follows: " That if the said party of the first part pay to the said party of the second part the just and full sum of $6,407 96, with lawful interest until paid, according to fifteen promissory notes," (describing them as above,) " then these presents and said promissory notes shall cease, determine, and be void; but, in case of the non-payment of the sum of $6,407 96, or any part thereof, or the interest on any part thereof, so to become due at the time above limited for the payment thereof, then, in every such case, it shall and may be lawful for the said party of the second part, his heirs, executors, administrators and assigns, to grant, bargain and sell the said goods, wares and merchandise, at public auction or private sale, and, on such sale, rendering the overplus moneys, if any there be, to the said party of the first part, his heirs, executors, and administrators, after deducting the costs and charges of such public or private sale as aforesaid."

During the progress of the trial, " the garnishee proposed to introduce as a witness Charles H. Bostwick, the defendant in the judgment. The plaintiff objected to his competency, on the ground that he was the mortgagor and the defendant in execution. The court sustained the objection, and excluded the witness; to which the garnishee excepted. The defendant then proposed to prove by said Bostwick that, at the time said mortgage was made, he had other property than that embraced in it; but the court refused to let him testify, and the garnishee excepted."

The plaintiff introduced as a witness one M. F. Roulston, a deputy sheriff, and asked him, "if said Bostwick, on the 20th July, 1854, was not reputed notoriously insolvent." On the defendant's objection that insolvency could not be shown in that way, the court would not let the question be asked. "The evidence was then offered to show knowledge by Price of Bostwick's insolvency, and the court admitted it for that purpose only; ruling, that it might be received as tending to show that Price had knowledge of such insolvency." To this ruling of the court the garnishee excepted.

The garnishee offered to prove by a witness, "that said Bostwick, on the 20th July, 1854, owned landed property in Texas." The court rejected the evidence, and the garnishee excepted.

"The court charged the jury, among other matters,—

"1. That it was not necessary that he should have conveyed all his property, if the conveyance was of all his available property.

"2. That in reference to the answer of the garnishee, if they believed that, when speaking of matters which he knew of, he stated them inconsistently, and with the apparent object of concealing what he should have answered, that would authorize them to lean against him on that point.

"3. That to show the insolvency of Bostwick, it was necessary to show that he was actually insolvent; but it would be sufficient to show that he was in failing circumstances, and that Price knew of it."

"To these charges the defendant excepted, and then requested the court to instruct the jury as follows:

"1. That the answer of the garnishee was not evidence for any purpose whatever.

"2. That if they believed from the evidence that Bostwick, at the time of the execution of said mortgage, was honestly indebted to Price in the sum therein mentioned; and that said mortgage was executed, in good faith, to secure said sum of money; and that said Price, after default made, took possession of the stock of goods, and sold the same to the best advantage, and, after deducting

expenses of said sale, retained the said sum of money, which was not more than sufficient to pay the sum mentioned in the mortgage,—then they should find for the defendant.

" 3. That if they believed from the evidence that Bostwick, at the time the mortgage was made and executed, was honestly indebted to garnishee in the sum therein mentioned; and that said mortgage was made, in good faith, to secure said sum of money ; and that said Price, after default made, took possession of the stock of goods, and sold the same to the best advantage, and, after deducting expenses of said sale, retained the said sum of money, which was not more than sufficient to pay said mortgage debt; and that said Bostwick had other property than that embraced in said mortgage,—then they should find for the defendant.

" 4. That if they believed from the evidence that Bostwick, at the time said mortgage was executed, was honestly indebted to the garnishee in the sum mentioned in the mortgage ; and that said mortgage was made, in good faith, to secure said sum of money ; and that said Price, after default made, took possession of said stock of goods, and sold the same to the best advantage, and, after deducting expenses of said sale, retained the said sum of money, which was not more than sufficient to pay said mortgage debt; and that said garnishee did not know that Bostwick was otherwise indebted at the date of the mortgage,—then they should find for the defendant."

The court refused the first one of these charges, and gave the others, but with this qualification : " That if the jury believed from the evidence that, when Bostwick made said mortgage, it was to secure debts then past due and renewed; and that he was then owing other persons, and was insolvent, and conveyed all of his property to Price for the payment of his debt, leaving all of his other debts unprovided for ; and the mortgage provided that Bostwick should remain in possession of the property until Price took possession of it, on the failure of the first note, if he thought fit to do so ; and that Bostwick remained in possession, selling and disposing of the

property for himself, until the 2d November, 1854; and the mortgage provided that the surplus, after paying Price's debt and the expenses, should be refunded to Bostwick; and that these facts were known to Price,—then the conveyance was fraudulent and void as against the creditors of Bostwick not provided for, without reference to the intention of the parties.".

The garnishee excepted to the refusal of the first charge asked by him, and to the qualification added to the other charges asked; and he now assigns as error the several rulings of the court, as above stated, to which he reserved exceptions.

WM. BOYLES, and D. CHANDLER, for the appellant.

A. J. REQUIER, contra.

STONE, J.—In Prentice v. McClanahan & Johnson, at June term, 1856, we considered and construed section 2291 of the Code. That was a case where a garnishee had answered to an indebtedness, but further answered that he had received notice that the note which evidenced his indebtedness had been transferred. An issue was made up under the statute, contesting the right to the note and its proceeds; and on the trial, the transferrees offered the defendant in execution as a witness. We held, that he was competent; overruling Scott, Slough & Co. v. Stallworth, 12 Ala. 25, and Marston v. Carr, 16 Ala. 325. In fact, we consider that the former of those cases had been overruled by Myatt v. Lockhart, 13 Ala. 338; and the latter by Kirksey v. Dubose, 19 Ala. 44, and Zackowski v. Jones, 20 Ala. 189. Our own decisions were in irreconcilable confusion. Both the reasoning and the results attained in the cases last cited have our unqualified approbation, and we adhere to the conclusions we announced in the case of Prentice v. McClanahan, supra. It results, that the court erred in refusing to permit Bostwick to testify at the instance of appellant.

2. As testimony tending to show that Price, at the time he took the mortgage from Bostwick, knew that the latter was insolvent, the plaintiff in garnishment proved,

against the objection of the defendant, that Bostwick was, at the time he executed the mortgage, *notoriously insolvent*. To this ruling of the court an exception was taken; and the case of Elliott & Stanley v. The State, 26 Ala. 26, is here relied on, as showing that in this particular the city court erred.

Although this question is one simply of evidence, yet it is of great practical importance. In most of our jury trials, involving the *bona fides* of assignments, mortgages and conveyances, this question of notice becomes a material inquiry. It is rarely susceptible of direct or positive proof. The more complete and manifest the insolvency, the less likely will the public be to remark or comment upon it. The universality of the knowledge precludes probability that the subject will be discussed, and thus heightens the difficulty of proving the direct fact of notice.

Another argument: The credit system rests, not alone, or even mainly, on the personal confidence which one man reposes in another. Ability to pay—responsibility to the coercive power of an execution—is a weighty consideration with one who parts with his goods on credit. Persons engaged in commerce and traffic are usually prudent, if not cautious. It is difficult to believe that merchants and traders will not learn the pecuniary condition of their customers, when that condition so vitally affects them, and is notorious in the neighborhood in which they are operating.

We think the vice of the argument in the case above cited, so far as it assails our former decisions on this point, consists in this, that it treats the subject as if the evidence when adduced *must control* the jury. Such was not the rule as formerly declared. It was only evidence to be weighed by the jury, as other circumstantial evidence is weighed. Its effect was for them, and, of course, would be greater or less, as the nature of the business in which the grantee was engaged, and the degree of notoriety which the grantor's insolvency had acquired, would strengthen or weaken the probability that the grantee also knew of its existence.

Without intending in this opinion to extend this principle further than to provide for cases like the present, we re-affirm the doctrine settled in the cases of Ward v. Herndon, 5 Porter, 382; Lawson v. Orear, 7 Ala. 784; Bank v Parker, 5 Ala. 731; Cook v. Parham, 24 Ala. 21, re-affirming Bank v. Parker, *supra*.

Lest this opinion might mislead, we feel it our duty to state, that the evidence we have been considering was not offered as a means of proving the *fact* of insolvency. For that purpose it would have been inadmissible.—See citations *supra*, and Brice & Co. v. Lide, at the present term. The testimony was offered simply as one means of proving *knowledge* in the grantee, of a fact the existence of which, under the rule, must have been established by other proof.

3. The record in this case does not contain enough to inform us whether the court erred in refusing to give the charge, that the answer of the garnishee was not evidence. Under the rule which requires us to indulge every reasonable presumption in favor of the correctness of the ruling in the primary court, it is our duty to suppose the answer was in evidence. The answer of the garnishee, although a part of the record in the cause, is, we admit, not necessarily evidence before the jury, in a contest such as this. It may, however, be given in evidence by the plaintiff in garnishment, but cannot be by the garnishee. See Myatt v. Lockhart, 9 Ala. 91.

4. This clear proposition, that the answer of the garnishee is not, *per se*, evidence in the cause, and can only be made evidence by the plaintiff, bears directly on the second charge given by the court. That charge relates exclusively to this answer. The answer, if in evidence at all, being made evidence by the act of the plaintiff, it was not permissible for him to discredit that evidence. Any charge, given at his instance, or by the court *ex mero motu*, which tended to throw distrust over that evidence, or instructed the jury that they might, for the benefit of plaintiff, lean against that evidence, violated one of the fundamental rules of evidence.

5. We do not think the court erred, in refusing to

receive evidence that the defendant in execution owned lands in the State of Texas. Such lands, if owned by him, were without the jurisdiction of the court, and could not be reached by any process known to our laws.—See Richards v. Hazzard, 1 Stewart & Porter, 156 ; Snedicor v. Burnett, 9 Ala. 434; Wilson v. Matthews, Finley & Co., at this term.

6. The explanatory charge given in this case is objectionable, in this, that it refers the question of the construction of one feature of the mortgage to the jury. Its language is, "If the jury believed from the evidence that * * * * the mortgage provided that Bostwick should remain in the possession of the property until Price took possession of it on the failure of the first note, if he thought fit to do so," &c. The construction of each and every clause of the mortgage was a question for the court, and should not have been left to the jury. There is another clause of this charge subject to the same criticism.

7. Another question was probably mooted in the trial below. The bill of exceptions is not very clear on this point; but we infer that section 1556 of the Code was made to bear on this case. If so, that was error. The effect of that section is not to render deeds which come within its provisions *void.* It simply defeats all preference of creditors which may be attempted in a general assignment. It does not destroy the deed, but upholds it in all respects, save that it destroys the preference. That section can exert no influence, in a trial which attacks such deed for fraud.—See Holt & Chambers v. Bancroft, Betts & Marshall, 30 Ala. 193.

8. We will not apply these principles to the various rulings of the primary court. We feel it our duty, however, to determine the character of this mortgage, presented as that question is by the refusal of the city court to give several of the charges asked by the garnishee. The mortgage in this case, after conveying the stock of goods owned by Bostwick, conveys also "such other goods and chattels as the said Bostwick may, from time to time hereafter, purchase and place in the said store and

ware-houses, to keep up and renew his stock in trade, which goods, &c., so to be hereafter purchased, shall be subject to the same lien and disposition as those named in said·schedule marked A." The mortgage fixes no law day in express terms, but rather contemplatès delay, in this, that although the notes were none of them due or bearing interest, yet it provides for the payment of the notes and all interest on them. It also gives authority to sell at public auction or private sale. Reading this mortgage, it is impossible to resist the conclusion, that the parties intended that the business should, for a time at least, continue as it had been previously conducted. It is, in its main features, strikingly like the mortgage we construed in the case of Constantine v. Twelves, 29 Ala. 607. In that case we said, "It is a sound principle, that when a debtor engaged in the mercantile business, in contemplation of insolvency, executes a deed as a security to a creditor, conveying his entire stock of goods, but reserves the possession of the goods and the right to continue to carry on the business as he had carried it on before, and to sell the goods in an undefined way, accounting only for the proceeds of such sales; and the creditor is aware of the contemplated insolvency, this reservation creates the presumption of fraud, which, if not rebutted by other facts and circumstances, is sufficient in law to render the deed fraudulent and void as to the other creditors of the grantor."—See, also, Ticknor, v. Wiswall, 9 Ala. 305. This mortgage has not even the dubious merit of providing that the proceeds of sales to be made by Bostwick shall be paid over to the mortgagee. Whether the mortgagor was insolvent, or in failing circumstances, when he executed this mortgage; and if so, whether Price knew that fact, were among the controverted questions in the court below. It is not for us to decide them. If the jury find their existence, we think the result follows, that this mortgage was fraudulent as to the existing creditors of Bostwick.

The judgment of the city court is reversed, and the cause remanded.