# Perry Insurance and Trust Company v. Foster.

*Bill in Equity by Creditor to have a Conveyance declared a General Assignment, or set aside on the ground of Fraud.*

1. *Assignments for the security of creditors; Code construed.*—The Code declares that all assignments, or other conveyances stipulating for the release of the debtor, fraudulent and void as to creditors of the grantor; general assignments are not prohibited, but preferences created by them are annulled, and they are converted into a security for the equal benefit of all creditors. With these exceptions, the Code wrought no changes in the principles settled by judicial decisions touching assignments, or other conveyances for the security of creditors. It has not entirely destroyed the right of an insolvent debtor to prefer one creditor to another.

2. *Same; when not declared fraudulent; provision as to sale.*—An assignment conveying a plantation, and crops thereon, requiring trustees to take possession and sell, will not be declared fraudulent, because it does not provide for the *immediate* sale of property conveyed. The sale must be made in a reasonable time, and the reasonableness for any delay for which the assignment provides, must depend on the character of the property, the cause of delay, and the circumstances of the particular case.

3. *Same; what not an unreasonable stipulation.*—Where, in the spring of the year, an assignment is made of a plantation, and the personal property used in cultivating crops upon it,—at which season it could not be easily rented, and it would be sacrificed by a sale, and necessarily abandoned if stripped of the personal property—it is not unreasonable to stipulate that a sale shall be delayed until the first day of December following; and, in the meantime, that the property shall remain in the possession of the grantors, to be used in making the crops which are to be delivered to the grantee as soon as gathered, and applied to the payment of the secured debts.

4. *Transfer constituting general assignment under our statutes.*—A transfer, without regard to its former conveyance, by the voluntary *act* of an insolvent or failing debtor, of substantially all of his estate subject to execution, for the security of one or more creditors in preference to the others, is, under our statutes, a general assignment which enures to the equal benefit of all creditors. To come within the influence of the statute, the disposition of substantially all of the debtor's estate to one or more creditors, in preference to the others, must be by volition or *act* of the debtor; the statute has no reference to preference or liens arising by operation of law.

5. *What will vitiate an assignment; and what not.*—The wilful, deliberate introduction of fictitious debts, or the intentional exaggeration of the amount of real debts, in which debtor and creditor participate, is feigning a consideration, and is a fraud which will vitiate an assignment; but error in the description of debts, or the introduction of fictitious debts, to which the creditor is not privy, will not vitiate an assignment; nor will an assignment be vitiated merely because the creditor has other security for any one or more of the debts, which security is not stated in the assignment.

6. *Same; what not a simulation or exaggeration of debts which will vitiate a conveyance.*—When a creditor takes from his debtor a conveyance to secure his acceptances of the debtor's bill of exchange, as well as other debts, and at the same time receives a transfer from third persons of judgments in their favor against the debtor, for a like amount, which was purchased with the bill, and

Vol. LVIII.

[Perry Insurance and Trust Company v. Foster.]

such is not expressly mentioned in the conveyance, it is neither a simulation nor exaggeration of debts which will vitiate the conveyance. The conveyance does not secure the judgment, and the debt, evidenced by the bill of exchange, is still an outstanding liability, unless the acceptor and debtor intended the transfer of the judgment to operate as payment of it, and this presumption is repelled when it is expressly stipulated in the conveyance that it shall not operate to impair the right of the holder or transferee of any judgment against the debtor, to enforce it at pleasure.

7. *Conveyance in this case held valid*—The conveyance, under the facts set out in this case, was valid, and could neither be set aside as fraudulent, nor declared a general assignment.

APPEAL from Chancery Court of Perry.
Heard before the Hon. CHARLES TURNER.

On the 2d of August, 1869, the appellee, Robert Foster, filed his bill in this cause, in the chancery court of Perry county, to have set aside a deed of trust executed by R. H. Lee, Jas. Lee, W. R. Brown, Jno. H. Lee, and the Perry Insurance and Trust Company, appellees. The material facts of the case, about which there is little or no dispute, are these : On the 19th day of February, 1869, Richard H. Lee and James Lee, were largely engaged in planting in Perry county, being the owners of three well stocked plantations. On each of these places they had a force organized and at work in the making of a crop of corn and cotton. They had been engaged in the business for many years, and were considered skilled in the same. They were at this time insolvent, and, without aid from some source, could no longer carry on their business. Executions, to the amount of $25,000, against them were already in the hands of the sheriff. Other suits were pending, and other debts were maturing. Geo. W. Tate, and the firm of Butt & Foster, held the oldest executions, amounting to some $20,000, which the sheriff was about to levy. A sale at that time would have broken up their planting operations for that year, and the property, though intrinsically more valuable, if then sold would have realized little, if anything, more than the amount of the judgments.

Richard H. Lee and James Lee were stockholders in the Perry Insurance and Trust Company to the amount of $5,000 each; they were indebted to the company to the amount of about $36,000, upon which, a brother, John H. Lee, was liable as endorser for them. Richard H. Lee, the active partner, realizing the situation, sought some creditor who could, and would assist him in protecting the property from sale, and enable him to make another crop, which, proving to be a large one, at the prices then prevailing, would go far towards paying up their indebtedness. He at last made the following arrangement with the Perry Insurance and Trust Company :

The company agreed to accept their bills, due the first and

fourth of the following January, to the amount of the Tate, and Butt & Foster executions, and to advance them a sum, not exceeding $5,000, with which to make a crop, and the Lees, upon their part, agreeing to convey to trustees in trust for the security of said company, the Prairie plantation, upon which James then resided, the stock, corn, fodder and farming implements upon the plantations owned by them, and the crops to be raised that year by them on said plantations. Upon negotiations with Tate, and Butt & Foster, the principle execution creditors, they agreed to receive the acceptances of the company and transfer their judgments; this was done, and the deed of trust was thereupon executed to secure, therein recited, five bills of exchange aggregating over $36,000, the advances to be made not exceeding $5,000, and the bills of exchange drawn on said company and accepted by it, and payable to Geo. W. Tate and Butt & Foster—the said deed being, as expressed therein, upon the following conditions, viz : The said R. H. Lee and James Lee shall well and truly cultivate said plantations and raise crops of corn and cotton thereon this year, and gather and prepare the same for market as early as practicable, and deliver the same to the said trustees; and the said trustees shall take possession of the said corn and cotton and sell the same in the customary manner for cash, at such time or times, and at such place or places, as by them may be deemed more advantageous to the Perry Insurance and Trust Company; and shall, on or before the first Day of December next, take possession of and sell all of the aforegranted real estate and all the other personal property aforesaid, or so much thereof as may be deemed necessary to satisfy the said debts and interest and damages which have accrued, or may accrue thereon, and all expenses touching the preparation of these presents and the execution of these trusts, and shall apply the proceeds, &c. . . . . It is further stipulated, that the trustees shall give thirty days notice of the time and place of the sale of the real estate and of the personal property now in existence. It is further stipulated and agreed that the trustees shall be and they are hereby authorized to take possession of all the aforegranted property, whenever they shall deem it necessary to carry into effect the purposes for which this deed was made, or whenever the said Perry Insurance and Trust Company shall so direct. It is further stipulated and agreed that these presents shall not in any manner interfere with or impair the lien of any judgments recovered against said James Lee and Richard Lee, or either of them, in favor of G. W. Tate, and Butt & Foster, or either of them, and shall not, in any manner, interfere with or im-

[Perry Insurance and Trust Company v. Foster.]

pair the lien of any executions issued upon said judgments, or with the right of the plaintiffs in said judgments, or their assignees, to cause any or all of said real or personal property to be sold at any time for the satisfaction thereof; but the said judgments shall remain in full force and effect, to all intents and purposes. Should any money remain out of the proceeds of said property, after the payment of the aforesaid debts, fees, and expenses, the same shall be paid over to the said R. H. and James Lee. These the company afterwards purchased.

Upon all these several judgments executions were kept alive and in the hands of the sheriff, and on the second day of August, 1869, the lands were sold by the sheriff under said executions, and John H. Lee became the purchaser at the sum of $25,160, for which sum the company gave R. H. and James Lee credit on their indebtedness. In payment of this bid, the company accepted the note of John H. Lee, secured by a mortgage upon the property purchased, and his individual plantation. This note still remains unpaid and the mortgage unforeclosed ; no interest having been paid thereon since January, 1873. On the 8th of March, 1870, the personal property conveyed by the trust deed was sold at private sale to John H. Lee, who had previously resigned his trusteeship, for $13,231.50 in cash, and that amount was credited upon the account of R. H. and Jas. Lee. The crop was in part a failure ; 195 bales of cotton were made and were turned over to the insurance company. The company, with the consent of the Lees, held this cotton for a better price for about a year, and then sold it at a price less than could have been realized when they received it. The net proceeds, $10,814.25, were then placed to the credit of the Lees. Since his purchase, John H. Lee sold the Holmes place for $12,000, one-half cash, and has farmed on the other places—R. H. Lee superintending the Muckle place, and Jas. Lee continuing to reside upon and farm the Prairie place.

The complainant, who is a creditor of R. H. and James Lee, attacks this transaction as intended to hinder, delay and defraud creditors.

The chancellor decreed the trust deed to Wilson R. Brown and John H. Lee fraudulent and void as to the creditors of Richard H. and James Lee, and that the Insurance and Trust Company be required to account for the property received by it under such deed. The rulings and decree of the Chancellor are now assigned as error.

W. M. BROOKS, and JOHN F. VARY, for appellants.—1. A judgment is not an assignment or transfer of the debtor's

property in any sense. It is a debt of record recovered by the plaintiff, not by the debtor, and usually against the debtor's will. And if he transfers, with or without the consent of the debtor, the transferee succeeds simply to the rights and obligations of the plaintiff, and becomes, in effect, not the assignee of the debtor's property, but the assignee of the property of the judgment creditor, with such liens and rights as the law gives him. Upon what show of reason or authority can it be held that the deed, in this case, when aided by the judgments—that which is not an assignment by the debtor—becomes, in effect, a general assignment. Taken together, the whole estate of the grantor is not thereby *divested* out of him, or transferred, or assigned by him to another. But every *"divestiture"* of a debtor's estate, though made by him, is not a "general assignment" within the meaning of the law. An absolute sale, by an insolvent debtor, of his entire estate, to a creditor, to pay a pre-existing debt, is not included within the meaning of the term "general assignment."—*Young v. Dumas*, 39 Ala.; *Hoskins v. Bailly et al.*, 48 Ala. 377 ; *U. S. v. McLellan*, 3 Sum. 343 ; *Dias v. Brouchand*, 10 Paige, 445 ; *Norton v. Cobb et al.*, 20 Geo. 44. But there is another reason why the deed is not a general assignment: In order to procure this deed, the company paid the bills of exchange to Tate and Butt & Foster, and advanced a large amount of money to make a crop, and afterwards advanced more to pay the other executions. This constitutes the company a purchaser for valuable consideration, of all the property included in the deed of trust. The distinction between a mere assignment to pay pre-existing debts, and one to secure payment of money advanced and liabilities incurred to obtain the assignment, is too well supported by authority to be now questioned.

2. Thus it clearly appears that the deed is not a general assignment. But treating it as a conveyance of all the property of the grantors, it is not void for the reason assigned by the chancellor, namely : *"for it is apparent that no substantial benefit is reserved to the grantors"* From the provisions of the deed, and the authorities, the chancellor cannot be sustained. Similar deeds made by *insolvent debtors* conveying *all their property*, and providing for the raising of a crop, also included in the deed, have been upheld by this court again and again. And it has been uniformly held that by such deeds no illegal benefit is secured or reserved to the grantors.—*Ravasies v. Alston*, 5 Ala. 297 ; *Graham v. Lockhart*, 8 Ala. 9 ; *DuBose v. DuBose*, 7 Ala. 235 ; *Clark v Bank*, 7 Ala. 765. See, also, *Abercrombie v. Bradford*, 16 Ala. 560 ; *Shackleford v. Bank*,

22 Ala. 246 ; *Miller v. Stetson*, 32 Ala. 162 ; *Henderson v. Dill*, 11 Ala. 689.

3. The simple recital of the facts in this case, is a complete refutation of the charge that the deed was made "with intent to hinder, delay, or defraud creditors," or with any illegal intent whatever. (See statement of facts). But what is the " *hinderance and delay*," which the law denounces as fraudulent ? Every transfer or conveyance of a debtor's property, whether all or a part, absolute or conditional, made to secure the payment of debts to one or more of his creditors to the exclusion of others, necessarily hinders or delays, or tends to hinder and delay the excluded creditors. But it is not every hindrance and delay that will render the deed void : "*Only such hindrance and delay as will operate as a fraud come within the operation of the statute.*"—Bump. on F. C. 67, and cases there cited ; *Hoffman v. McCall*, 5 Ohio St. 124. The statute is aimed only at *intended fraud :* to pay, or secure the payment of a debt to one creditor, is no fraud upon others— *no legal injury*.—Bump. 218, 219, and notes ; *Lee v. Flanagan*, 7 Ired. L. R. 474. See, also, 4 Bump. 220, *et seq.*, 357, 358, and notes ; 3 B. Monroe, 556-9 ; Ib. 423 ; 5 Ib. 313 ; 39 Ala. 60 ; 5 Ohio, *supra ;* 32 N. Y. 209 ; 29 Penn. 387 ; *Ala. Life Ins. Co. v. Petway*, 24 Ala. 566 ; *Pullman v. Newbury*, 41 Ala. 176.

4. The chancellor holds that the deed does not show the connection between the acceptances and judgments and the *transfer* of the latter to the company, and that in omitting to do so "*a material fact is concealed* from the world," with intent to wrong and defraud the other creditors of the grantors. This is visiting the bare omission of a fact, the disclosure of which could have been of no benefit to the creditors, and its concealment no injury, with unusual harshness and severity. By the well established rules of law, as well as the principles of common charity, "we are taught that fraud is not to be presumed when the circumstances relied on to sustain that allegation are fairly susceptible of an honest intent," and that "courts do not *strain* to *force* conclusions of fraud." 24 Ala. 566 ; 21 Ala. 136 ; 3 Ala. 352. The deed, in truth, discloses every material fact upon which it is based. In fact, there was no occasion to refer in the deed to the judgments at all. Upon reading the deed, it is obvious that there could be no intention to *conceal* the connection between the acceptances and the judgments.

5. The chancellor says that an effort is made to show that the Lees owed two debts : one indorsed by the judgments, and the other by the bills of exchange ; when, in fact, there is but one debt, and the other is *simulated*. It is certain, how-

ever, that the deed did not provide for a *simulated* debt. The bills were evidence of a real debt, and the company, by its accommodation and acceptance, had become bound for its payment; and the company, being so liable, had the right to take counter security. The security provided by the deed was insufficient, but the judgments were more efficient because they created a lien on all the property of the grantors. The imputation that the parties to the deed were endeavoring to produce the impression that there were two debts: one evidenced by the bills, and the other by the judgments, is unfounded. Its powers are to be executed, not to pay two debts due to Butt & Foster and Tate, but only to pay the one debt, evidenced by the bills. And the judgments are left to be enforced according to rules of law and the practice of courts. There could be no impropriety in failing to disclose, in the deed, that the grantors had given the company other securities for the same debt. "If the debt is imperfectly secured, it is not objectionable to provide for it in the assignment. *If it is amply secured, a provision for its payment will not render the assignment void.*"—See *Strong v. Skinner*, 4 Barb. 559; *Hastings v. Palmer*, 1 Clarke, 52; 35 Barb. 554; 38 N. Y. 293; Bump. on F. C. 388. And the omission in the assignment of any reference to the other securities "is not inconsistent with honesty and good faith."

6. The other points of the brief (which is very elaborate), go to the questions, "as to fraud in fact," "former adjudication," which need not be noted in addition to the portion of the brief already condensed. Several points of the decree of the chancellor are also commented upon.

ELMORE & GUNTER, and WATTS & SONS, with whom was POWHATTAN LOCKETT, *contra.*—1. It may be considered as clearly established that a debtor in failing circumstances, and actually insolvent, and known by the creditor to be so, cannot, under the guise of a mortgage or deed of trust, protect an estate for his own enjoyment, use, or benefit. In other words, when the debtor is insolvent, and known to be so by the creditor, no instrument of preference can be executed which does not "make a simple and *unconditional* appropriation of his property to the payment of his debts"—and any arrangement which continues his business for him by future advances, or otherwise reserves any use for the grantor, is fraudulent in law, irrespective of the actual intention of the parties with respect to other creditors.—*Constantine v. Twelve*, 29 Ala. 607; *Lukins v. Aird*, 6 Wall, 78; *Reynolds v. Welch*, 47 Ala. 203; *Reynolds v. Crook*, 31 Ala. 637; *Knight v. Wiley, Banks & Co.* 27 Ala. 347; *Kirksey v. Montgomery*,

26 Ala. 172; *Grimshaw & Brown v. Walker*, 12 Ala. 102; 7 Paige Rep. 568; *Grover v. Wakeman*, 11 Wend. 187; *Nicholson v. Leavitt*, 2 Selden, 518–19; *Borland v. Walker*, 7 Ala. 269.

2. In reference to the simulation of debts, it is laid down as the law, " That where the deed describes debts not shown to be due *by the debtor*, the inference is proper that the deed was executed, not for the *bona fide* purpose of securing debts actually due, but that making use of that indebtedness and simulating it to be greatly more than it was, the chief intention was to hinder and delay creditors. And no rule is better established, or is more salutary in its effects, than that which declares it the imperative duty of the grantee in a deed attacked for fraud by creditors, to remove *any suspicion of unfairness from the transaction.—Marriott & Hardesty v. Givens*, 8 Ala. 712; *Hall, Moses & Roberts v. Heydon*, 41 Ala. 242. In such transactions parties are conclusively held to intend the natural and legitimate consequences of their act, no matter how loudly they may protest to the contrary.—*Wiley, Banks & Co. v. Knight*, 27 Ala. 347; *Pope v. Wilson*, 7 Ala. 694; *Welch v. Reynolds*, 47 Ala. 203; 11 Wend. 225. The evidence clearly establishes a simulated debt in this case.

3. No one can certainly assert that the purpose of the deed was not, *in part at least*, to prevent an immediate application of the property of the debtors in favor of the creditors. Although a deed may be on a valuable consideration, if there is an actual intent to *hinder, or delay, or defraud*, other creditors, the existence of a valuable consideration is not sufficient to uphold the transaction.—See 41 Ala. 168, and authorities there cited; Kerr on Fraud and Mistake, 213; *Brigham v. Tillinghast*, 3 Kern. 215; *Welch v. Reynolds*, 47 Ala. 200. Let any one imagine a disconsolate creditor, seeking for something to make his money out of, coming across this instrument, would he not at once calculate the debts secured and provided for by the deed? and would he not see that the acceptances, amounting to over $20,000, were saddled upon the property, and at the same time understand that the judgments for a like amount were to be paid out of the property? and would not such an array of debt, with the lien on the stock of the Lees kept in the dark, have a tendency to dishearten, to hinder and delay, any but the most venturous? Did not " honest and fair dealing require the truth of the transaction to be disclosed on the face of the instrument?"—4 Denio, 224.

4. It has been universally held that the fact of future advances being secured by a deed, is alone sufficient to render it fraudulent and void when a knowledge of the insolvency

[Perry Insurance and Trust Company v. Foster.]

is brought home to the creditor. In the case of *Barnum v. Hempstead*, 7 Paige, 570, Chancellor Walworth says: "The first objection which is made to the validity of the assignment in this case is, that it contains a provision to pay to Lay, one of the assignees, for his future advances to and future liabilities for the assignors, in preference to, or to the exclusion of the debts which are due to creditors whose debts had been contracted by the assignors previous to the assignment. If I was satisfied that such was the fair construction of the instrument, I should not hesitate. for a moment to declare it fraudulent and void, upon that ground alone; *as such an attempt to secure a future credit and benefit to the assignors, by means of the assigned property, to the prejudice of their present creditors, could not be sustained in any court.*"—30 N. Y. Rep. 211; 4 Denio, 217. See, also, 7 Paige, 37.

5. The transfer of the judgments and the execution of the deed of trust are parts of one transaction.—*Cummings & Cooper v. McCullough*, 5 Ala. 335; *Bancroft, Betts & Marshall v. Holt & Chambers*, 30 Ala. 193. And either being fraudulent, no protection can be claimed under them.— *Wiley, Banks & Co. v. Knight*, 27 Ala. 336; *Wiley, Banks & Co. v. Boyd*, 38 Ala. 625; *Grover v. Wakeman*, 11 Wend. 187.

6. It may be pretended that an actual intent to defraud is necessary to make a conveyance fraudulent. It would be a useless provision of the law to afford a remedy only in cases where an actual intent had to be proved, since it usually must be proved, by the parties to the transaction. Is there a case known in which the parties *confessed to a bad intent?* The intent with which a thing is done must be shown by outward acts. Every person is presumed to have common and ordinary understanding, and is presumed to intend the natural consequence of his acts; and, therefore, when the inevitable result of a deed is to hinder and delay creditors, it is constructively fraudulent, no matter what the parties may say to the contrary. "The statute of frauds refers to a legal intent and not a moral intent; that is not a moral intent as contra-distinguished from a legal intent. If he do what is forbidden he will not be allowed to say that he did not intend to do a forbidden act. A man's moral perceptions may be so perverted as to imagine an act to be fair and honest which the law justly pronounces fraudulent and corrupt; but he is not, therefore, to escape from the consequences of it. The law must have a more certain standard for measuring men's intents, than each individual's varying notions of right and wrong."— *Welch v. Reynolds*, 47 Ala. 203; *Wiley, Banks & Co. v. Knight*, 27 Ala.; 11 Wend. 225; *Thomas v. Jenks*, 1 American Lead. Cases, 86, where all the authorities are collected.

7. The question of fraud in the transaction, as·well as the plea of estoppel, on account of certain alleged proceedings in the Circuit Court of Perry county, having been practically settled by the decree of the Chancellor, we will say nothing on these points save that section 1867 of the Rev. Code was only intended to destroy the right of preference in a general assignment free from objections in other respects. And that if the transaction is otherwise fraudulent, it is void, under § 1865 of the Rev. Code, as to the attacking creditors; and the beneficiary under such a deed cannot, after detection, set up that the deed is a general assignment and claim to share in the results. And to call attention again to the fact that the acceptances of the Insurance Company, which purchased the judgments, being given "at the request and for the accommodation of the said Lees," of necessity made the property in the bills in the Lees, and the judgments purchased with them the property of the judgment debtors, and, therefore, destroyed them as valid and subsisting debts against their estate.—*Stephens v. Sinclair*, 1 Hill, N. Y. 143; *McLemore v. Pinkston*, 31 Ala. 266; *Wallace v. Br. Bank*, 1 Ala. 565.

BRICKELL, C. J.—The assignments of error present several questions, on which we do not deem it necessary to express an opinion, as they do not affect the conclusions we have reached, and it is not probable they will arise again under similar complications. If these are conceded to the appellee, his right to any relief depends on the one or the other of two propositions, neither of which, in our judgment, can be maintained. The *first* of these is, that the conveyance executed on the 19th of February, 1869, by James and Richard H. Lee, is fraudulent and void as against their creditors. The *second* is, that if the conveyance is not fraudulent, taken in connection with the cotemporaneous transfer to the preferred creditor, of judgments against the grantors, executions on which were a lien on all their estate, it is a general assignment, under the statute enuring to the equal benefit of all their creditors.

The conveyance is, doubtless, as decided by the chancellor, an assignment strictly and technically, as distinguished from a mortgage, or a deed of trust for. the security of creditors, in the nature, and with the incidents of a mortgage. The entire estate in the property designated, legal and equitable, is conveyed to the trustees, and all that remains to the grantors is a resulting trust.—Burrill on Assignments (3d ed.), 11–16. It is also a fact, about which there is no controversy, that at the time of its execution, the debtors were actually

insolvent, pressed by executions, under which, if forced sales had been made, their whole estate would have been sacrificed. From these they were anxious to obtain ease, and the opportunity to continue for the current year their planting operations, for which they had partially arranged. They were largely indebted to the Perry Insurance and Trust Company, and their brother, John H. Lee, was liable as accommodation endorser for this indebtedness. Sales of their property, under the executions, would have involved him in financial ruin, and the company probably in large loss. The company agreed to accept the bills of exchange of the debtors, having near twelve months to run, for a sum sufficient to cover the larger judgments, to pay the smaller judgments, taking a transfer of them, and reserving the right to issue execution for their collection, whenever they deemed it necessary, and to advance a sum not exceeding $5,000 for the cultivation of crops on the lands assigned and other lands of the debtors ; the debtors to cultivate the crops, to gather and prepare the same for market, and to deliver the same without delay to the trustees. The agreement is substantially embodied in the assignment. The crops, as well as the property in existence, by the terms of the assignment, are appropriated to the payment of the enumerated debts, which include the acceptances given for the judgments, and the prior indebtedness. The trustees are authorized to take possession whenever they deem it necessary, or the company shall direct, and must take possession on the ensuing first of December, and sell so much of the property as is necessary for the payment of the expenses attending the execution of the trusts, the attorney's fees for preparing the conveyance, and the secured debts. If a surplus of the proceeds of sale remain, it is payable to the debtors.

In view of the insolvency of the debtors, it is insisted the assignment is fraudulent—that it is not an absolute, unconditional appropriation of the property conveyed to the payment of the particular debts, and that it recovers to the debtors substantial benefits, injurious to the creditors not secured. The questions thus presented, are not of the first impression in this court, but are controlled by adjudications which legislation alone can change. When inconvenience has resulted from these adjudications, the legislature has applied the corrective. If they were disturbed by the courts, touching so nearly as they do, the daily transaction of business ; sanctioned as they are by the profession, who, relying on them, advise conveyances ; and by the practice of the community who make and accept such conveyances, not only would injustice to individuals follow, but titles to property

would be rendered insecure, and distressing litigation provoked and fostered.

It is conclusively settled, that a debtor in failing circumstances, or actually insolvent, has the right of preference among his creditors. He may assign his property for the payment or security of one, to the exclusion of all others. Prior to the Code, the only limitation on this right of preference was, that the property transferred should be devoted, absolutely and unconditionally, to the payment of the preferred debts, without the reservation to the debtor of any personal benefit. The whole, or a part of his property, could be assigned and appropriated to his creditors in equal or unequal proportions. He could, also, stipulate that the creditors accepting the assignments should release him from all further liability on their demands. The authorities are collected in 1 Brick. Dig. 128, §§ 75, 76. The Code declares an assignment, or other conveyance stipulating for the release of the debtor, fraudulent and void as to the creditors of the grantor.—Rev. Code, § 1866. General assignments are not prohibited—preferences created by them are annulled, and they are converted into a security for the equal benefit of all creditors.—Rev. Code, § 1867; *Holt v. Bancroft*, 30 Ala. 193; *Price v. Mazange*, 31 Ala. 701. It was deemed in violation of sound policy to arm an insolvent debtor with the power of exacting from creditors a release from liability, as the price of a preference in payment or security, and though assignments and other conveyances with stipulations for a release, had been supported, the statute intervenes and declares them, for the future, fraudulent. So it was deemed sound policy required that all general assignments, which, as defined by this court, are conveyances of all, or substantially all of a debtor's property, by mortgage, deed of trust, or assignment, for the security of debts, without regard to the preferences expressed in them, should enure to the equal benefit of all creditors. No other changes in the principles settled by judicial decision, touching assignments, or other conveyances for the security of creditors, has been wrought by legislation. The legislature, not having intervened, we repeat, it is not for the courts to depart from these principles; nor, it seems to us, to look with disfavor on conveyances the legislature have not condemned, and the community are in the daily habit of giving and accepting, under the sanction of the law as the courts have declared it.

Whatever may be the form in which the preference is given—whether that of an assignment, or of a mortgage, or of a deed of trust, it must be made in good faith, without an intent to defraud other creditors. Omitting for future con-

(33)

sideration an alleged simulation of debts in the assignment, and there is no fact or circumstance which justifies the imputation of a fraudulent intent on the part of the debtors, and certainly not as to the creditor, or the trustee. The intent was to secure the creditor, and indebtedness, the justness of which is not disputed. The debtor had the right to give, and the creditor the right to demand and to accept security. The property conveyed is not in disproportion to the amount of the indebtedness, and the time for the execution of the trusts by a sale, and the conversion of the property into money, and its application to the payment of the debts is not unreasonably prolonged. It is not possible, on these facts, to found the imputation of fraud. If there be fraud which vitiates the transaction, it must be deduced from the stipulations and conditions of the assignments. The principle by which these are to be tested, are well defined. In the absence of an actual intent to defraud, which would vitiate the conveyance, however just and fair its provisions appeared on its face to be, no assignment, or mortgage, or deed of trust for the security of creditors, has been declared void, if it distinctly and irrevocably declared the uses for which it was made, and without reserving to the debtor any personal benefit, the property was absolutely and unconditionally, within a reasonable time, devoted to the payment of the secured debt.

The assignment contemplates that the planting operations of the debtors should be continued for the current year, under their supervision, and that future advances should be made by the creditor, for their successful prosecution : and it is this feature which is supposed to be inconsistent with an absolute, unconditional appropriation of the property to the payment of the enumerated debts, and is, in effect, a reservation for the use of the debtors. Conveyances with stipulations for the continuance of planting for the current year, when the property conveyed is of the kind employed in that business, have been too often supported in this court for their validity now to be questioned.—*Ravesies v. Alston*, 5 Ala. 297; *P. & M. Bank v. Clarke*, 7 Ala. 765; *DuBose v. DuBose*, Ib. 235; *Graham v. Lockart*, 8 Ala. 9. If the crops to be produced are, with the existing property, to be devoted to the payment of the secured debts, it has not been supposed such a stipulation is a reservation of a benefit to the debtor, though thereby the residuum which must revert to him may be increased. It is not unusual in assignments to provide that the assignees, or the debtor, under their direction, may continue the business, and if it appears this is done, not for the interest and benefit of the debtor, and to

[Perry Insurance and Trust Company v. Foster.]

the prejudice of unsecured creditors, but to promote the interests of the creditors who are preferred, they are sustained.—Burrill on Assignments, 281. In *Cunningham v. Freeborn*, 11 Wend. 240, the property assigned was a foundry, and the assignees were authorized to continue the business, for the purpose of working up materials, and completing the manufacture of any of the assigned property, and to pay such expenses as might be incurred thereby. Speaking of this provision of the assignment, Justice NELSON said : "In all this, I can see no violation of law, or of honesty and fairness aside from the principle of preference, which we are not at liberty to question. The establishment was large, and embraced the whole of the fund out of which the debts must be paid, if at all. It was a kind of property not readily convertible into money, and valuable and profitable only in the the business in which it had been employed, and we cannot say that this provision in the assignment was injudicious, much less illegal. The chance of a sale might be greater and better, by keeping the establishment in operation, than in the abandonment of it." A similar decision was made in *DeForest v. Bacon*, 2 Conn. 633 ; *Kendall v. New England Carpet Co.* 13 Conn. 283 ; *Foster v. Saco Manufacturing Co.* 12 Pick. 451, and *Woodward v. Marshal*, 22 Pick. 468. The court of appeals in New York have overruled *Cunningham v. Freeborn*, but on reasoning, which is in conflict with the views this court has uniformly taken of these voluntary conveyances by insolvent debtors, for the security of creditors.—*Dunham v. Waterman*, 17 New York, 9. Of course, as is suggested in one or more of the cases cited from our own reports, if an assignment contemplated the indefinite continuance of planting operations, it could not be sustained. But when the provision is simply for the temporary use, profitably to the creditor, of the property conveyed, until a sale can be effected judiciously, it is difficult to perceive any substantial objection to it. But the fact must not be overlooked, that in this assignment, the crops are more than the products of the property conveyed. They form a distinct part of the subject matter of the conveyance, and were to be cultivated not only on the lands conveyed, but other lands of the debtors not conveyed. They were the proper subject matter of assignment; and security for advances to aid in their cultivation, is sanctioned by the common law, and by the statutes. The employment of the personal property assigned, in the cultivation of the crops, was the employment of it, in a mode which would increase the security of the creditor, and the fund for his payment. We do not understand that the assigned property must be *imme-*

*diately* converted by a sale. The sale must be made in a reasonable time, and the reasonableness of any delay for which the assignment provides, will depend on the character of the property, the cause for it, and the particular circumstances of the case. It seems not to have been doubted, that a sale of the real estate would have been injudicious, leading to its sacrifice, ruinous alike to debtor and to ꞏcreditor, if made immediately. If stripped of the personal property on it, intended for its cultivation, it would have been abandoned, for it was an unsuitable season for renting. When these facts are all considered, it seems unreasonable to say it was illegal, or unjust, or immoral, to use the personal property, as it was used in the cultivation of crops on the lands conveyed, and the lands not conveyed. Or, that the provisions of the assignment authorizing the use, are a reservation for the benefit of the debtor. The only benefit accruing to him, was the diminution of his debt, so far as the crops would satisfy it. It is said, "the crops were to go to the creditor, but not as belonging to the creditor, but as belonging to the debtor, and to be credited upon his debts." The creditor has precisely the interest in reference to the crops, he has in reference to the lands, and in the existing personal property an equity to compel the trustees to appropriate them to the payment of the debts. The trustees have the same title to the crops, they have to the lands and personal property—the entire title, legal and equitable. The debtors have no other interest in the crops than they have in the other property. There is no distinction between them made by the assignment, and the trustees could, whenever they deemed it necessary, or they were directed by the creditor, have taken possession of the crops, or of the other property, real or personal. The case of *Ticknor and Day v. Wiswall,* 9 Ala. 305, (s. c. 6 Ala. 178) is not an authority for declaring this stipulation the reservation of a benefit to the debtors, or a fraud on other creditors. The two cases do not seem to us to bear any resemblance. There, an insolvent debtor, a merchant, executed a mortgage of real estate, and of personal property, including a stock of goods, wares and merchandise, stipulating for the retention of possession and use, with the power to rent the real estate, and to receive the rents and profits ; and with power to *sell and dispose of the goods, and other personal property,* and his duty was, as expressed in the stipulation, *from the nett proceeds,* to pay and satisfy the mortgage debt. The law day of the mortgage had passed for more than a year, his possession was unbroken, and he had continued to sell and dispose of the goods, and to replenish the stocks, not diminishing the mort-

gage debt. It was in reference to this stipulation, and the continuous possession of the goods, dealing with them as his own, that Judge GOLDTHWAITE said : "It is difficult to conceive why a debtor, on the eve of insolvency, should provide for the reservation of the power to sell, or of the use of the mortgage property, unless some benefit to himself was intended, and it seems equally so, to imagine how a creditor could consent to receive such a security without lending himself to carry out the debtor's intention." The court declined, when the case was first before it, to declare the stipulation avoided the mortgage. The retention of possession after the law day, and the continuous exercise of acts of ownership by the mortgagor, taken in connection with the unlimited power of disposition, created in the judgment of the court, a presumption of fraud, which it was the duty of the mortgagee to explain and remove, and which, if not explained, was fatal to the validity of the mortgage. The case does not declare, nor was it intended to declare, that a mortgage is avoided by the reservation of the possession and use of the mortgaged property, if not extended to an indefinite period beyond the law day, or, if the law day is not so unreasonably postponed, as of itself from the mere delay, to tie up the property for the ease and advantage of the debtor. Beyond this, the court could not have gone, without infringing the rule so often announced, that the reservation to the mortgagor of possession and use, until the law day, was the mere expression of what the law would have implied in its absence. In any view, the distinction between that case and the present, is marked and palpable. The debtors are not entitled to the use of the property, nor have they any power of disposition. The use is appropriated, as is the property itself, to the security and payment of the preferred debts, and is for the benefit of the creditor, rather than the benefit of the debtor. The power to sell, or otherwise dispose of the property, is exclusive in the trustees, and no right to control it resides in the debtors, by any term of the assignment. There are several cases, subsequent to that of *Ticknor & Day v. Wiswall,* which would probably now compel the courts to declare the stipulation for possession, with the right to dispose of such property, as goods, wares and merchandise, made by an insolvent merchant, would be construed as the reservation of a benefit to the debtor, inconsistent with an absolute, unconditional appropriation of the property to the payment of the secured debts.—*Constantine v. Twelves,* 29 Ala. 607; *Price v. Mazanye,* 31 Ala. 701; *King v. Kenon,* 38 Ala. 63. These cases do not seem to us to have any feature in common with the case under consideration.

The power of disposition, with no other security for its just exercise, than the integrity of the debtor, is too nearly allied to a power of revocation to be supported, especially when the subject is property, held only for sale in the ordinary course of the debtor's business.—Bump on Fraud. Conv. 161. A careful examination of this assignment, fails to disclose that it contains any stipulation or provision, condition or trust, not heretofore pronounced by this court, free from mischievous qualities. They may be discountenanced by other tribunals, and may not be in harmony with their jurisprudence; an inquiry on which, it is not our province to enter. It would be gross injustice, if the conveyance was now annulled, when the parties were invited into it, by an unbroken chain of judicial decision.

Every assignment, or security for the payment of debts, necessarily involves a resulting trust to the debtor. When the debts are paid, if the property, or any portion of it remains, it reverts to the debtor. The creditor has an equity merely to appropriate it to the payment of his debt, which is extinguished by the satisfaction of the debt. If trustees are interposed, and clothed with the title, the title is charged with the trusts, and when these are performed, the title terminates. Hence, from the case of *Malone v. Hamilton*, Minor, 286, to the present time, it has uniformly been held, that when an assignment is for the security of a part only of the grantor's creditors, to the exclusion of others, a stipulation for the reversion to the debtor of any part of the property, or for the payment to him of the surplus of the proceeds of sale, which may remain after the satisfaction of the debts, is but the expression of the legal effect of the conveyance, and does not affect its validity.—*Johnson v. Cunningham*, 1 Ala. 258; *Ravesies v. Alston*, 5 Ala. 297; *Hindman v. Dill*, 11 Ala. 689; *Brown v. Lyon*, 17 Ala. 659; *Miller v. Stetson*, 32 Ala. 161.

The remaining question, touching the validity of the assignment, is the alleged simulation of debts. The debts constitute the consideration which supports the assignment, and must be actual, existing liabilities. The wilful, deliberate introduction of fictitious debts, or the intentional exaggeration of the amount of real debts, in which debtor and creditor participate, is feigning a consideration, and a fraud, which will vitiate the assignment. Error in the description of debts, or the introduction of fictitious debts, to which the creditor is not privy, will not vitiate it.—*Stover v. Henington*, 7 Ala. 142; *Graham v. Lockhart*, 8 Ala. 9; *Anderson v. Hooks*, 9 Ala. 704; *Tatum v. Hunter*, 14 Ala. 557. The simulation supposed to exist in the present case, lies in the supposition

that the assignment operates a security for the acceptance of the bills of exchange and for the judgments which were the consideration of these bills. But the assignment is not a security for the payment of the judgments, nor does it purport, nor was it so intended to operate. It is a security for the bills of exchange, which are not the same debts as the judgments, but separate and independent debts, involving other parties, and different liabilities. The judgments were presently due, capable of enforcement by compulsory process, at the election of the creditors. The bills were running to maturity, not causes of action until they became due, and then, if not paid, the subject of suits. The defendants in the judgments, were alone liable for their payment. The bills of exchange were the debts primarily of the acceptors, as to the creditor, and if they failed to pay, of the drawers, if they were charged by notice of the dishonor. The payment of the judgments, would have satisfied all liability of the drawers to the acceptors, but it would not have extinguished their liability to the holders of the bills. The assignment is not open to the imputation therefore of securing two separate and distinct debts, when in fact but one existed. It operates a security for but one debt, and that is the liability of the company on the acceptances. Notes, or bills, are frequently given for pre-existing debts, and payable at a distant day from the maturity of such debts. They do not operate a payment, unless so intended by the parties. The only effect of taking them, is to suspend the remedy on the pre-existing debt, until they mature.—*McCravey v. Carrington*, 35 Ala. 698; *Mooring v. Ins. Co.* 27 Ala. 254. If an assignment was made for the security of such note or bill, with a reference to a prior security for the pre-existing debt, it would scarcely be supposed, the assignment was open to the imputation of keeping alive two debts, when but one existed. Such a case would be stronger than the one now presented, and if the property assigned exceeded in value the amount of the secured debts, it might be a circumstance of suspicion, but could not be more. It seems to be supposed, the judgments were satisfied by the acceptances, and therefore the assignment is deceptive in treating them as unsatisfied, and the plaintiffs, or their assignees, as having the right to issue executions on them. Whether the acceptances should operate a satisfaction of the judgments, was the legitimate subject of agreement between the judgment creditors, the debtors, and the acceptors of the bills. As in the case of a payment of a judgment by a stranger, whether it shall operate a satisfaction, depends on the intention and agreement of the parties when it is made. The judgment may, as in this case, be

transferred, and execution in the name of the plaintiffs, for the benefit of the party paying, authorized.—Freeman on Judgments, § 468. In *Harbeck v. Vanderbilt*, 20 N. Y. 395, a judgment had been rendered against several defendants, one of whom paid in cash the proportion he was liable to pay, as between him and his co-defendants, and for the remainder gave the plaintiff his negotiable promissory note, indorsed, for his accommodation, by Vanderbilt. An assignment of the judgment to a trustee for the protection of Vanderbilt, against his liability as indorser, was supported, the court saying: "The assignment of the judgment to protect him against his liability, was just as legitimate and proper, as it would have been to indemnify him for money paid." It is impossible, it seems to us, to misunderstand the transaction between the parties, or to deduce from it an illegal or fraudulent intent. The judgments were transferred to the company, the right to issue execution on them at pleasure was reserved, and operated as a certain security for indemnity against their liability as acceptors. So regarding it, the company had two securities for protection against their liability, that afforded by the assignment and that afforded by the judgments. It is not an objection to the assignment that any one or more of the debts were already secured by mortgage or by judgment.—Burrill on Assignments, 142. It not infrequently occurs that a creditor has more than one security for a debt, or more than one fund, to which he can resort for payment. If other creditors have rights on one only of such securities, or can look to one only of the funds, the powers of a court of chancery are adequate to protect them, by requiring that the favored creditor shall first exhaust the security, or fund, to which they can not resort, before appropriating the other. In such cases it may be proper for the creditor, if taking a new security by assignment, to mention the prior securities. The failure to do so, is not necessarily inconsistent with good faith, and can not be regarded as a badge of fraud.—*Stern v. Fisher*, 32 Barb. 198.

It is insisted, however, that the connection between the judgments and the accepted bills, was concealed, and the concealment was premeditate, to avoid the appearance of a general assignment, and its operation as a common security for all creditors. It is difficult to read the assignment without discovering that there is a connection between the accepted bills and the judgments, or without the discovery of facts which would excite the reasonable belief of such connection. The reservation of a right to enforce the judgments, notwithstanding the assignment, is unnecessary, if the right was not reserved to some party to the assignment, having authority

to control them, and a party who, by accepting the assignment, would waive that right, or might be supposed to waive it. There is no party to the assignment, other than the beneficiary acquiring rights by it, which are at all inconsistent with the enforcement of the judgments, and the only rights it acquires, bearing the semblance of inconsistency, is that of indemnity against the acceptances of the bills. Security for the other debts, of which the beneficiary was the creditor, was not inconsistent with the enforcement of the judgments. As matter of fact the charge of concealment is unwarranted, and the motive for the concealment does not exist, if the facts had been distinctly stated, and not left in any degree to inference, the transaction is not, in legal effect, a general assignment. We have no doubt the parties intended to avoid a general assignment, and it was their legal right to avoid it. If they have resorted to no contrivance, and no covinous practices to avoid it, while they may have acquired liens on all the debtor's estate, they have violated no law, and offended no right of other creditors.

A general assignment, enuring under that statute to the equal benefit of all creditors, as it may be defined under our decisions, is a voluntary transfer, by a debtor, of all, or substantially all, of his estate subject to execution, for the security of one or more creditors in preference to others.—*Holt v. Bancroft*, 30 Ala. 193; *Price v. Mazange*, 31 Ala. 701; *Warren v. Lee*, 32 Ala. 440; *Stetson v. Miller*, 36 Ala. 642; *Longmire v. Goode*, 38 Ala. 579; *Crawford v. Kirksey*, 55 Ala. 282. As will be seen hereafter, the term *voluntary*, is not used in the sense in which it is frequently employed—that of being without *valuable consideration*. It is not material what may be the form of the transfer—it may be in the form of a mortgage, or of a deed of trust, or of an assignment proper and technical, if security to particular creditors, in preference, or to the exclusion of others, is intended, and it operates as the parties to it intend. Such an assignment may be made by one, or by several instruments, and if made by several, they may be executed concurrently, or there may be an interval between the times of their execution. If they are parts of the same transaction, executed in pursuance of a purpose, to convey the debtor's entire property, or substantially all of it, as security for one or more creditors, to the exclusion of all the others, the several instruments will be construed as one, operating as one would operate, a general assignment. Whatever may be the form or character of the instrument, to operate as a general assignment, it must proceed from the will, and be the act of the debtor; hence, we defined the transfer as *voluntary*. It is the preference of

creditors, springing from the mere volition of the debtor, created by his act, investing the creditor with a specific lien on his entire estate, the statute condemns. Prior to the statute, such preferences were supported—now they are annulled, and the conveyance in which they are found, is preserved as an equal security for all creditors. The statute has no reference to liens arising by operation of law—these are not within its letter, or spirit, or the mischief it was intended to avoid. The lien acquired by the assignment, operated on a part only of the debtor's property. The lien of the executions issuing on the judgments operated on their entire estate. The assignment was an absolute transfer of title and estate, the act of the debtor. The lien of the executions was not in any sense a transfer—it was not *jus ad rem*, or *jus in re*. It was simply a right to charge the debtor's estate, by compulsory sale, with the payment of the judgments.—Freeman on Judgments, §§ 338–42.

In Pennsylvania, a statute provides, that all assignments in trust for the benefit of one or more creditors, creating preferences, shall enure to the benefit of all creditors in proportion to their demands. The question, whether judgments confessed, operating a lien on the estate of the debtor, and thus creating a preference, fell within the statute, has been several times considered by the courts of that State.—Blakey's Appeal, 7 Barr. 449; *Woman v. Walfersberger*, 19 Penn. 59; *Grey v. McIlree*, 26 Penn. 92. · In the case last cited, the court say: "There is little, if any, similarity between an assignment and a judgment. The one is an absolute transfer of its subject matter, whilst the other is but the means whereby to enforce payment of a debt. An assignment passes the property in real and personal estate, rights and credits, whilst a judgment, of itself, gives no vested estate in any of the property of the defendant, merely creating a lien upon his real estate, if any he has at the time of its entry." When several instruments are construed together, as constituting a general assignment, it is because they are of a kindred nature, operating as a transfer of property, in pursuance of a common purpose to prefer particular creditors. The lien of the executions was not created by the debtors—it was created by law, and was in existence before the assignment was contemplated. It is one of the superior rights the law awards to the vigilance of the creditors, who had reduced their claims to judgments. To connect it with a subsequent assignment, that the two may operate as a general assignment, would simply deprive these creditors, or their assignees, of a legal right, honestly acquired, and give it to another, having no superior equity. Liens created by law may be

[Rogers et al. v. Torbut et al.]

abrogated by the legislature, at their discretion, without invading any constitutional guaranty. The day after the execution of the assignment, the statute creating the liens might have been repealed. Would this repeal have changed the character of this transaction—converting it from a general, into a special assignment? The error which, it seems to us, pervades the whole argument of the appellee, is in attempting to connect rights created by law, with rights created by the act of the debtors, and give them the same operation and effect. We are not able to pronounce the assignment fraudulent, or to declare that the transaction between the parties should operate as a general assignment.

The decree must be reversed, and a decree here rendered, dismissing the bills, original and amended, and the appellee must pay the costs in this court, and in the Court of Chancery.

STONE, J., not sitting.